Marcia LINVILLE, Plaintiff,

v.

**STATE OF HAWAII; Bartholomew, A. Kane, State Librarian; and Doe Defendants 1–10, Defendants.**

Civ. No. 93–00661 ACK.

United States District Court, D. Hawai'i.

Dec. 2, 1994.

Lunsford D. Phillips, Honolulu, HI, for plaintiff.

Marcia Linville, pro se.

Robert A. Marks, Francis P. Keeno, Sherri-Ann Loo, Office of the Atty. Gen., State of HI, Honolulu, HI, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### BACKGROUND

On January 13, 1994, Plaintiff Marcia Linville filed her First Amended Complaint,[1] alleging that Defendant State of Hawaii ("State") discriminated against her on the basis of her gender when the State did not select her for the position of Deputy State Librarian.[2] Plaintiff also alleged that the State wrongfully terminated her from her employment as a Public Librarian III.

Plaintiff Linville was employed as a librarian by the State of Hawaii's public library system for over nineteen years. Throughout most of her tenure, Plaintiff served in the position of children's librarian. From 1970 to 1988, Plaintiff was also Chief Steward for the Hawaii Government Employees Association, Unit 13. During that time, Plaintiff

---

1. Plaintiff's original complaint was filed on August 24, 1993.

2. Plaintiff's claims against Defendant Bartholomew A. Kane, the State Librarian, were dismissed by this Court in an order filed May 2, 1994.

steadily participated in Title VII protected activities, both personally and as union steward. She has complained to the legislature, the Board of Education and the Librarian Advisory Committee about Defendant's discriminatory practices regarding librarian's pay. In 1985, she was the main plaintiff and witness in a class action trial against the State of Hawaii over a complaint she had filed with the United States Equal Employment Opportunity Commission (EEOC), alleging systemic gender discrimination in the form of unequal pay.

In 1985, Plaintiff became ill with Chronic Stress and Anxiety Syndrome. Originally, her illness was reasonably accommodated by informal authorization to work flexible hours, an accommodation which was also granted other library employees. In July, 1987, after Plaintiff's illness worsened, Defendant's physician recommended that Plaintiff be granted formal permission to work flexible hours. Defendant denied this request and instead began criticizing and disciplining Plaintiff's tardiness, absenteeism and work performance. Because Defendant would not allow her to work flexible hours, Plaintiff began calling in sick in the morning, remaining home until her physical symptoms abated. In the period from January 1988 to June 1988, Plaintiff reported late at least twenty days a month. During July through September her absenteeism was even worse.

Plaintiff charged the time she missed work as sick leave, of which she had accrued hundreds of hours during her 19 year tenure. Nonetheless, Defendant categorized this time as late or absent and disciplined Plaintiff with written reprimands and suspensions. Moreover, despite the fact that its own physician recommended Plaintiff work flexible hours, Defendant required Plaintiff to obtain a written doctor's excuse for each absence. Plaintiff has presented evidence that Defendant imposed different standards for her sick leave time than it imposed on other library employees.

During this time, Plaintiff and Defendant met to discuss Defendant's concerns with respect to · Plaintiff's irregular attendance. Defendant presented two options to accommodate Plaintiff's health condition—a job sharing position or a temporary assignment as an Adult Reference librarian which would allow more flexibility. Plaintiff rejected these options because she could not financially afford the reduction in pay that would result from a job sharing position and because she was concerned that she could be terminated without cause from the temporary Adult Reference position.

Sometime in 1987, the Hawaii State Legislature created a new civil service position entitled "Deputy State Librarian." The creation of this position was announced in the Honolulu Advertiser and the Honolulu Star Bulletin on or about November 15, 1987. The announcement stated that applicants for the newly created position must possess a masters degree in library science and no less than five years of progressively responsible library work experience. On or about December 28, 1987, a letter was sent to all initial applicants for the position, including Plaintiff. The letter stated that the State of Hawaii would permit applicants for the newly created position to substitute equivalent education or work experience to satisfy the minimum qualifications. The Deputy State Librarian position was reannounced with the following additional statement:

> a combination of qualified progressively responsible professional work experience and/or job related education equivalent to a masters degree in library science may be accepted in lieu of the formal academic degree specified.

Approximately fifty-five people, including Plaintiff, applied for the Deputy State Librarian position. The State Librarian, Bartholomew Kane, interviewed seventeen female applicants and five male applicants during the period of January 11, 1988, through January 20, 1988. After the interviews were completed, the State Librarian selected a male applicant, John R. Penebacker ("Penebacker"), to fulfill the newly created position of Deputy State Librarian.

All of the female applicants interviewed by Kane had either masters or doctoral degrees in library science and substantial experience in library work. In contrast, Penebacker possessed a bachelor's degree in political science and had never worked in a library.

Instead, Penebacker had significant work experience in state government. He was a research assistant for the Senate Majority Research Office for the Hawaii State Legislature, Special Programs Specialist for the Hawaii Government Employees Association, a delegate to the 1978 Constitutional Convention and a member of the State Board of Education.

Shortly after Penebacker was selected and appointed to the position of Deputy State Librarian, the State Librarian developed a new job description for the position and changed the job title to "Special Assistant to the State Librarian." The new description had substantially reduced job qualifications, requiring only a bachelor degree from an accredited college, with major work in business administration or political science and four years of administrative experience in government or large business.

Following Penebacker's appointment, Plaintiff voiced loud complaints to the Hawaii State Legislature and the Hawaii Board of Education. She also appeared on television, where she further protested his selection.

On or about September 4, 1988, Plaintiff again met with the State Librarian to discuss her work performance. At that meeting, Defendant offered to place Plaintiff on medical leave for six months if she would drop her grievances and Title VII complaints. According to Plaintiff, Defendant also threatened to terminate her employment if she refused to withdraw her complaints. Plaintiff refused Defendant's offer and was subsequently terminated on or about October 3, 1988.

Following her termination, Plaintiff filed a claim of discriminatory and retaliatory discharge with the EEOC. On September 27, 1990, the EEOC issued a letter of determination stating that it found Plaintiff was discriminated against in the terms and conditions of her employment and discharged from her position in retaliation for her engaging in activities protected by Title VII. The EEOC found insufficient evidence, however, to support Plaintiff's allegation that she was discriminated against because of her gender. The EEOC issued Plaintiff a notice of right-to-sue on May 26, 1993.

Plaintiff also filed a labor grievance challenging her discharge as being without "proper cause" and therefore in violation of the Unit 13 Collective Bargaining Agreement. The grievance was submitted to arbitration and the arbitrator affirmed Defendant's discharge of Plaintiff in an opinion filed September 16, 1994.

## STANDARD OF REVIEW

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to its case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical. Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the

grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra*, 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services*, 809 F.2d at 630–31.

## II. JUDGMENT ON THE PLEADINGS STANDARD

■ Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984).

■ In reviewing a defendant's motion under Fed.R.Civ.P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiff,

accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations. *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992); *Hal Roach Studios v. Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989).

When the district court goes beyond the pleadings to resolve an issue, the motion is properly treated as a motion for summary judgment. Fed.R.Civ.P. 12(c); *Hal Roach Studios v. Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1990); *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir.1982).

### DISCUSSION

### I. ELEVENTH AMENDMENT

■ Plaintiff asserts a § 1983 claim and pendent state law claims of negligent and intentional infliction of emotional distress, negligence, and violation of Hawaii statutory law proscribing discriminatory practices against the State of Hawaii. These claims are all barred by the Eleventh Amendment. Under the Eleventh Amendment, an unconsenting state is generally immune from suits brought in a federal court. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). This principle of sovereign immunity applies to suits brought against a state by its own citizens as well as by citizens of other states. *Id.*

■ Federal claims against States are generally only permitted if there is congressional authorization of the suit.[3] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614 (1976) (congress authorized Title VII suits against States and state officials). The United States Supreme Court has specifically held that the Civil Rights Act of 1871, 42 U.S.C. § 1983, excludes States as parties defendant in § 1983 actions. *Fitzpatrick*, 427 U.S. at 452, 96 S.Ct. at 2669. Therefore, Plaintiff's § 1983 claim against the State is not authorized and Plaintiff is barred from asserting it in this Court.

---

**3.** The Court notes that a plaintiff may also bring federal claims for prospective injunctive relief against a state official acting in his or her official capacity. Plaintiffs may likewise bring claims for monetary relief against a state official in his or her individual capacity. Since State Librarian Bartholomew Kane was dismissed from this action, the Court need not address these issues.

The Eleventh Amendment not only bars most federal claims, it also bars pendent state law claims. *Pennhurst,* 465 U.S. at 120, 104 S.Ct. at 918. This immunity does not depend on the nature of the relief sought—claims for monetary damage or injunctive relief are equally barred. *Id.* Therefore, Plaintiff is barred from asserting her state law claims of emotional distress, negligence and violation of state statutory law in this Court.[4]

The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's § 1983 claim (count V) and Plaintiff's state law claims (counts II, III, VII and VIII) as barred by the Eleventh Amendment.

## II. *STATUTE OF LIMITATIONS*

### A. *Applicable Statute*

To determine the statute of limitations for Plaintiff's state law claims, this Court looks to Hawaiian limitation periods. Section 657–7 of the Hawaii Revised Statutes provides that "actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued". This limitation applies to Plaintiff's personal injury claims of negligent and intentional infliction of emotional distress and negligence. Likewise, this two year limit applies to Plaintiff's claims of discriminatory employment practices under H.R.S §§ 378–2 and 378–62. Because these statutes do not contain limita-

tion periods, the Court must invoke the state's general personal injury statute of limitations, H.R.S. § 657–7.

Where federal law does not provide a statutory limitation for federal claims, this Court likewise looks to state law. The applicable state statute of limitations depends on the characterization of the federal claim. In *Wilson v. Garcia,* the United States Supreme Court held that § 1983 claims are best characterized as personal injury claims. 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Thus, this Court should apply the two year limit of Hawaii's general personal injury statute to Plaintiff's § 1983 claim.[5] Analogously, Plaintiff's claim of discrimination under Title IX is also best characterized as a personal injury claim and is thus likewise subject to Hawaii's two year statute of limitations. *Taylor v. Regents of the University of California,* 993 F.2d 710, 712 (9th Cir.1993); *Bougher v. University of Pittsburgh,* 882 F.2d 74, 77–78 (3d Cir.1989).

In the case at bar, Plaintiff was terminated by Defendant, effective October 3, 1988. Thus, because the alleged discriminatory and tortious acts occurred prior to or during her termination, Plaintiff's claims all accrued by this date. Plaintiff's original complaint, however, was not filed until August 24, 1993, almost six years after her termination. Thus, absent tolling, Plaintiff's

---

4. Plaintiff alleges that the state violated H.R.S. §§ 378–2 and 378–62, prohibiting employers from engaging in discriminatory practices. Like Title 7, these state statutes require that a plaintiff submit her complaint to administrative proceedings, H.R.S. § 378–4, and obtain a right-to-sue from the administrative body before proceeding with a claim under the statute in a court of law. H.R.S. § 368–12. Plaintiff has not presented this Court with notice of any such right-to-sue under H.R.S. §§ 378–2 and 378–62. Thus, Plaintiff's claims under these provisions must also be dismissed as premature.

5. In 1984, the Ninth Circuit held that H.R.S § 657–1(4), the six year catch all limitation for "personal actions of any nature whatsoever not specifically covered by the laws of the State" should be applied to § 1983 claims. *Lai v. City and County of Honolulu,* 749 F.2d 588, 590 (9th Cir.1984). However, this opinion rested on a characterization of § 1983 actions as "liability

created by statute" rather than personal injury. *See id.* at 589. Following the *Wilson* decision, the Ninth Circuit has consistently applied general personal injury statutes of limitations to § 1983 actions, rather than a state's general catch all limitation statute. *See Del Percio v. Thornsley,* 877 F.2d 785, 786 (9th Cir.1989) (California's general personal injury statute applies to § 1983 actions); *Perez v. Seevers,* 869 F.2d 425, 426 (9th Cir.), cert. denied, 493 U.S. 860, 110 S.Ct. 172, 107 L.Ed.2d 128 (1989) (Nevada's general personal injury statute of limitations applies to § 1983 actions); *see also, Price v. State,* 939 F.2d 702, 708 n. 7 (9th Cir.1991) (Dictum indicating Hawaii's general personal injury statute of limitations would apply to § 1983 actions). Likewise, the Supreme Court of Hawaii held that courts should apply H.R.S. § 657–7 to § 1983 claims, rather than H.R.S. § 657–1(4). *Pele Defense Fund v. Paty,* 73 Haw. 578, 837 P.2d 1247, 1259 (1992).

§ 1983 claim, Title IX claim, and state law claims are all barred by Hawaii's two year limitation.

### B. *Tolling*

#### 1. *EEOC Grievance*

 This case presents the issue whether the timely filing of a charge of employment discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) tolls the running of the limitation period applicable to other actions based on the same facts. As a general rule, a statute of limitations may be equitably tolled when a Plaintiff is pursuing an administrative remedy for the same alleged wrongdoing. *Harris v. Alumax Mill Products,* 897 F.2d 400, 404 (9th Cir.1990); *Conley v. International Brotherhood of Electrical Workers, Local 639,* 810 F.2d 913, 915 (9th Cir.1987). This tolling is "most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit." *Conley,* 810 F.2d at 915. Plaintiff was required to submit her complaint to the EEOC prior to filing a Title VII action in this Court. Thus, any statutory limitation on the filing of her Title VII claims was tolled during the EEOC's investigation.

 Parallel avenues of relief, however, are generally not tolled by a Title VII administrative remedy, even though the claims are based on the same facts and directed toward the same ends. *Johnson v. Railway Express Agency,* 421 U.S. 454, 467, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975); *Harris,* 897 F.2d at 404; *Cf. Salgado v. Atlantic Richfield Co.,* 823 F.2d 1322, 1325 (9th Cir.1987) (state claims were tolled by Title VII proceeding where procedures and remedies were wholly integrated and related and state agency deferred its investigation to the EEOC). In *Johnson,* the United States Supreme Court held that Congress did not intend Title VII proceedings to delay independent avenues of redress. *Johnson,* 421 U.S. at 461, 95 S.Ct. at 1720. Thus, a plaintiff who fails to timely file claims that are separate, distinct and independent from her Title VII claims will be barred from pursuing those claims.

Plaintiff's § 1983, Title IX and state law claims are separate, distinct and independent from her Title VII claims. Clearly, Title VII administrative proceedings are not a prerequisite to Plaintiff's filing of these claims in this Court. Further, Plaintiff has not demonstrated that the procedures and remedies of these claims are wholly integrated with Title VII procedures and remedies. Thus, the grievance Plaintiff filed with the EEOC did not toll the statute of limitations for these claims.

#### 2. *Collective Bargaining Grievance*

 Parallel independent remedies are likewise not tolled by collective bargaining proceedings. *International Union of Electrical Radio and Machine Workers, AFL–CIO, Local v. Robbins & Myers, Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 447, 50 L.Ed.2d 427 (1976) (Statutory rights provided by Title VII are not tolled by collective bargaining proceedings because they have legally independent origins from contractual rights under the collective bargaining agreement); *Puchert v. Agsalud,* 67 Haw. 25, 677 P.2d 449, 454–55 (1984) (Unlawful discharge claims are not tolled by collective bargaining proceedings because the claim has its source in state statute and is not identical to any contractual claim under the collective bargaining agreement). Collective bargaining proceedings only toll claims which do not accrue until the grievance proceeding is finalized, *International Association of Machinists and Aerospace Workers v. Aloha Airlines,* 790 F.2d 727, 737–38 (9th Cir.1986) (Breach of fair representation claim was tolled by grievance proceeding where claim did not arise until employer refused to arbitrate and thus grievance process was exhausted), or claims that are either barred during the proceeding or at least arguably arbitrable under the collective bargaining agreement. *Trent v. Bolger,* 837 F.2d 657, 659 (4th Cir.1988) (Appeal to Merit System Protection Board was tolled by grievance proceeding where collective bargaining agreement specifically prohibited the employee from pursuing both avenues of relief).

 An arbitrator may only arbitrate disputes arising under the provisions of the collective bargaining agreement. *Puchert,*

677 P.2d at 454. His or her authority is limited to interpreting and applying the contractual provisions contained within the agreement and thus encompasses neither federal or state statutory claims. *Id.* Therefore, unless the collective bargaining agreement specifically bars the employee from seeking simultaneous relief from a court, the grievance proceedings do not toll the statute of limitations for these independent, parallel claims. Plaintiff has not submitted evidence demonstrating that she was prohibited from pursuing her federal or state law claims during the arbitration proceeding. Therefore, based on the evidence submitted, the Court finds that the statute of limitations was not tolled for these claims.

Because neither the collective bargaining proceedings nor the EEOC proceedings tolled the statute of limitations from running on Plaintiff's § 1983, Title IX, and state law claims, they are all barred by Hawaii's two year limitation. The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's § 1983 claim (count V), Title IX claim (count IV) and state law claims (counts II, III, VII and VIII) on this basis.

### C. *Title VII Limitation*

■■■ Defendant also argues that Plaintiff's Title VII claims should be dismissed because her amended complaint was filed more than 90 days after she received a right-to sue letter from the EEOC. Defendant's argument ignores the relation back principles of Rule 15(c). Fed.R.Civ.P. 15(c). Under Rule 15, an amended pleading relates back to the date of the original pleading if

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

In the case at bar, Plaintiff's complaint was amended to correct a defective caption. The claims asserted are identical to those asserted in the original pleading, filed August 24, 1993, within 90 days from the date Plaintiff received her right-to-sue letter from the EEOC. Defendant contends that because it was never served the original complaint, the complaint was null and void *ab initio.* However, Defendant admitted in a previous hear-ing before this Court that it erred in refusing to accept service based on the faulty caption. Order Denying in Part and Granting in Part Defendant's Rule 4(m) Motion, filed May 2, 1994. Defendant would thus have the Court bar Plaintiff's claim because of its own error. The Court cannot agree with such an unjust result. Rather, the Court finds that Plaintiff's Title VII claims are not barred by the statute's 90 day limitation because Plaintiff filed her original complaint within this period.

Therefore, the Court DENIES Defendant's motion to dismiss Plaintiff's Title VII claims (counts I and VI) on this basis.

### III. *Disparate Treatment Claim*

■■■ The disparate treatment theory of discrimination applies where an employer has treated some person less favorably than others because of his or her race, color, religion, sex or national origin. See *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 334–43, 97 S.Ct. 1843, 1854–58, 52 L.Ed.2d 396 (1977). Under such a claim, proof of discriminatory motive is critical. *Id.* at 335 n. 15, 97 S.Ct. at 1854 n. 15; *see also Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d 531, 537 (9th Cir.1982). In *United States Postal Service v. Aikens,* the Supreme Court stated:

> The "factual inquiry" in a Title VII case is "[whether] the defendant intentionally discriminated against the plaintiff." In other words, is "the employer ... treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'"

*Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

■■■ When the plaintiff claims that unlawful discrimination is the sole motive for the defendant's actions, the parties' burdens are as follows: The plaintiff must establish a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision. If the defendant carries this burden, the plaintiff must then demonstrate that the defendant's reason was "'a pretext or dis-

criminatory in its application.'" *Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1358–59 (9th Cir.1985) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

■■■■ Under these standards, the Title VII plaintiff's burden on summary judgment is to establish a prima facie case of discrimination, and, if the employer articulates a legitimate, nondiscriminatory reason for its actions, to raise a genuine factual issue as to whether the articulated reason was pretextual. *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109–10 & n. 7 (9th Cir.1991) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (1973)). This approach is in accord with the United States Supreme Court's decision in *St. Mary's Honor Center*. The majority there held that, because the trier-of-fact is free to disbelieve the defendant's reason, it is entitled to infer discrimination from plaintiff's proof of a prima facie case and showing of

pretext. *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Given this, once a plaintiff establishes a prima facie case and raises a genuine issue that the employer's explanation is pretextual, genuine issues of fact regarding the employer's motive will exist for the trier-of-fact to resolve.[6]

### A. Prima Facie Case

■■■■ The Ninth Circuit has concluded that the Title VII plaintiff need produce very little evidence of unlawful discrimination to establish a prima facie case of disparate treatment and avoid summary judgment. *Sischo–Nownejad*, 934 F.2d at 1110–11. In particular the court requires that the plaintiff simply offer evidence that "give[s] rise to an inference of unlawful discrimination." *Id.* This evidence of discriminatory motive may be either direct or circumstantial. *Aikens*, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3;

---

**6.** A different approach has developed for cases in which the plaintiff alleges that both legitimate and discriminatory motives played a role in the disparate treatment. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Sischo–Nownejad*, 934 F.2d at 1109. In evaluating such a "mixed motive" case, it "makes no sense to ask" whether the legitimate reason was pretextual. *Price Waterhouse*, 490 U.S. at 247, 109 S.Ct. at 1789. Thus, in a mixed motive case, the plaintiff must demonstrate "that it is more likely than not that a protected characteristic 'played a motivating part in [the] employment decision.'" *Sischo–Nownejad*, 934 F.2d at 1110 (quoting *Price Waterhouse*, 490 U.S. at 244, 109 S.Ct. at 1787).

The Civil Rights Act of 1991 modified the Supreme Court's holding in *Price Waterhouse* as to when a plaintiff is entitled to relief in a mixed motive case. *Price Waterhouse* held in part that an employer could avoid liability for intentional discrimination in a mixed motive case if it could demonstrate that the same action would have been taken even if the illegitimate motive had played no role in the employment decision. 490 U.S. at 244–45. As amended by the 1991 Act, Title VII now provides that a plaintiff establishes an unlawful employment practice when the plaintiff "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m); *see also Estate of Reynolds v. Martin*, 985 F.2d 470, 475 n. 2 (9th Cir.1993). Under the 1991 amendments, however, if an employer is able to establish that the same action would have been taken in the absence of the

illegitimate motive, plaintiff is not entitled to damages, but may only be awarded declaratory relief, certain injunctive relief, and attorney's fees and costs. 42 U.S.C. § 2000e–5(g)(2)(B). Nonetheless, the Court notes that the 1991 Amendments are not applied retroactively. *Landgraf v. USI Film Products*, —— U.S. ——, ——, 114 S.Ct. 1483, 1488, 128 L.Ed.2d 229 (1994). Thus, since Plaintiff's action accrued in 1988, the original *Price Waterhouse* standard would be applicable to this case.

To be entitled to rely on a mixed motive theory, the plaintiff must produce direct evidence of defendant's discriminatory motive. *See, e.g., Price Waterhouse*, 490 U.S. at 291, 109 S.Ct. at 1812 (Kennedy, J., dissenting) ("Courts will also be required to make the often subtle and difficult distinction between 'direct' and 'indirect' or 'circumstantial' evidence."); *Bruno v. City of Crown Point, Indiana*, 950 F.2d 355, 361 (7th Cir.1991) ("Under *Price Waterhouse*, the plaintiff has the initial burden of proving by direct evidence that an impermissible factor … played a motivating part in an employment decision."); *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1008–09 (10th Cir.1990) (finding direct evidence required before plaintiff entitled to rely on *Price Waterhouse* burdens); *but see, e.g., Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1182–86 (2d Cir.1992) (citing cases).

Plaintiff has not met her initial burden of presenting direct evidence of Defendant's discriminatory motive. Plaintiff has shown neither gender animus nor a specific link between that animus and the adverse employment decision. *See infra* n. 7.

*Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 672 (9th Cir.1988).[7]

■ Circumstantial evidence is evidence which, if believed, establishes the existence of a fact not directly proved through inferences drawn from those facts that are directly proved. *Kishaba v. Hilton Hotels, Corp.,* 737 F.Supp. 549, 551 (D.Haw.1990). In the Title VII discrimination context, circumstantial evidence is evidence which is " 'adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under [Title VII], . . . i.e., evidence that indicates that 'it is more likely than not' that the employer's actions were based on unlawful considerations." *Nanty v. Barrows Co.,* 660 F.2d 1327, 1331 (9th ·Cir.1981) (quoting *International Bhd.,* 431 U.S. at 358, 97 S.Ct. at 1866, and *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)).

■ In *McDonnell Douglas,* the Supreme Court held that, in the hiring context, the Title VII plaintiff could establish a prima facie case through the use of circumstantial evidence by showing: (1) the plaintiff belongs to a racial minority, (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) the plaintiff was rejected despite his or her qualifications, and (4) the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[8] 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).

■ In the case at bar, Plaintiff alleges that Defendant discriminated against her on the basis of gender when it did not select her for the position of Deputy State Librarian.[9] Plaintiff, as a woman, is a member of a protected class. Plaintiff applied for the position of Deputy State Librarian and clearly met the minimum qualifications for the position—Plaintiff has a masters degree in library science and almost 20 years of work experience as a librarian. Complaint, p. 6. Despite Plaintiff's qualifications, she was rejected by Defendant. Defendant instead hired a male applicant who met neither of these standards. Complaint, p. 5. Thus, Plaintiff has clearly presented sufficient circumstantial evidence to establish a prima facie case of disparate treatment.

7. Direct evidence is evidence which, if believed, proves a fact without inference or presumption. *Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993); *Kishaba v. Hilton Hotels Corp.,* 737 F.Supp. 549, 551 (D.Hawaii 1990). To establish a prima facie case through direct evidence, Plaintiff must submit specific facts demonstrating that "discriminatory animus in part motivated or was a substantial factor in the contested employment action." *Brown,* 989 F.2d at 861. In other words, Plaintiff must not only show gender animus, she must show a specific link between that animus and the adverse employment decision. *Stacks v. Southwestern Bell Yellow Pages,* 996 F.2d 200, 201 n. 1 (8th Cir.1993); *Wiehoff v. GTE Directories Corp.,* 851 F.Supp. 1329, 1338 (D.Minn.1994). Courts have reasoned that direct evidence may include action or remarks of an *employer* that reflect a discriminatory attitude. *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991); *Stacks,* 996 F.2d at 202. Comments which demonstrate a "discriminatory animus in the decisional process, or those uttered by individuals closely involved in employment decisions . . ." may also constitute direct evidence. *Beshears,* 930 F.2d at 1354 (quoting *Price Waterhouse,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804 (1989)). Direct evidence does not, however, include stray remarks, statements by non-decisionmakers or statements by decision-makers that are not related to the decisionmaking process. *Id.* Plaintiff has not alleged any direct evidence of gender animus. Thus, she must establish a prima facie case of discrimination through circumstantial evidence of discriminatory motive.

8. The *McDonnell* test is not intended to be an inflexible rule. *Furnco Constr. Corp.,* 438 U.S. at 575, 98 S.Ct. at 2948–49. Courts have adopted it in a variety of employment contexts. For example, the Ninth Circuit has held that in the discriminatory discharge context, the plaintiff must show: (1) he or she was in the protected class, (2) he or she was doing the job well enough to rule out the possibility that he or she was fired for inadequate job performance, and (3) the employer sought a replacement with qualifications similar to the complainant's, thus demonstrating a continued need for the same services and skills. *Sengupta v. Morrison–Knudsen Co., Inc.,* 804 F.2d 1072, 1075 (9th Cir.1986).

9. Plaintiff has not alleged or presented evidence that Defendant discriminated against her based on gender when Defendant terminated her employment. Rather, Plaintiff contends that the discharge was in retaliation of her protected Title VII activities.

## B. *Nondiscriminatory Reason*

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory explanation for its actions. Because the burden of persuasion remains with the plaintiff, however, the defendant need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the defendant carries this burden, the legally mandatory inference of discrimination arising from the plaintiff's prima facie case drops away and the burden of production shifts back to the plaintiff. *Sischo–Nownejad,* 934 F.2d at 1109–10; *Wallis v. Simplot,* 26 F.3d 885, 889 (9th Cir.1994).

Because Plaintiff Linville has established a prima facie case of discrimination, this Court must consider Defendant State's nondiscriminatory explanation for its rejection of Plaintiff. Defendant alleges that Linville was not selected as Deputy State Librarian because she was not the most qualified applicant. To support its position, Defendant has submitted affidavits of Bartholomew Kane ("Kane"), the Hawaii State Librarian, and John R. Penebacker ("Penebacker"), the individual hired as Deputy State Librarian. In his affidavit, State Librarian Kane alleges that the position of Deputy State Librarian involves "management of programs, policies and/or activities of the public libraries" and that the deputy librarian serves as "the liaison between the [Public Library] System and the Hawaii State Legislature, the Board of Education, other Executive Departments, the Library Advisory Commissions and other agencies and individuals." Kane Affidavit, p. 2. A trier of fact could rationally conclude that Mr. Penebacker's extensive experience in the state legislature, the Hawaii Government Employee's Association, and the State Board of Education qualified him for these tasks. *See* Penebacker Affidavit, p. 1–2. In comparison, although Plaintiff was a public librarian for over 20 years, Defendant contends Plaintiff had little administrative or supervisory experience. Defendant's Memo-

randum in Support of Motion, p. 14. From this evidence, a trier of fact might rationally conclude that Linville was not as qualified for the position as Mr. Penebacker. Thus, Defendant has met its burden of setting forth a legitimate nondiscriminatory rationale for its decision not to promote Plaintiff to the position of Deputy State Librarian.

## C. *Pretext*

In evaluating whether a defendant's articulated reason is pretextual, the trier of fact must look at the evidence supporting the prima facie case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reason. *Sischo–Nownejad,* 934 F.2d at 1109–10; *Wallis,* 26 F.3d at 890. The ultimate burden of persuading the trier-of-fact that the defendant intentionally discriminated against the plaintiff, however, remains with the plaintiff at all times. *St. Mary's Honor Ctr.,* ——— U.S. at ———, 113 S.Ct. at 2747 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). The plaintiff may succeed in this burden either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987).

Plaintiff Linville has raised a genuine issue of fact regarding whether Defendant's stated rationale for hiring Penebacker instead of Plaintiff was a pretext. Plaintiff has submitted evidence demonstrating her substantial qualifications for the position, thus calling into question Defendant's characterization of her experience. In addition to having a masters degree in library science and nearly twenty years of library work experience, Plaintiff served as President of the Library Association of Hawaii; legislative liaison for library matters for the Unit 13, DOE Hawaii Government Employees Association and for the Library Association of Hawaii; co-chairperson of the children's section of the Second Governor's conference on library and information; and as agency council head for Unit 13 of the Department of Edu-

cation. Complaint, p. 6. Plaintiff also submitted letters highly recommending her for the position of Deputy State Librarian. Exhibit M, attached to Plaintiff's Memorandum in Opposition [hereinafter "Plaintiff's Exhibit —"].

Although this evidence alone does not establish that Plaintiff was more qualified than Penebacker, viewed in light of Defendant's repeated alteration of the requisite qualifications, it at least raises a genuine issue of fact regarding the credence of Defendant's proffered explanation. When Defendant initially created the position of Deputy State Librarian, it set forth job qualifications that included a masters degree in library science and at least five years of library experience. Complaint, p. 4. Penebacker, having never worked in a library and holding only a bachelor degree in political science, failed to meet both of these qualifications. Before hiring Penebacker, Defendant amended the job qualifications to permit equivalent work experience in lieu of a formal academic degree. Complaint, p. 4. This amendment permitted work experience or job related education to supplant the former requirement of an academic degree; it did not eliminate the additional requirement that applicants possess five years of library experience. As noted above, Penebacker never worked in a library. Moreover, it is questionable whether Penebacker's work experience was sufficiently equivalent to a masters degree in library science to meet the amended requirement. Defendant's further amendment of its qualifications subsequent to Penebacker's appointment suggests that it did not. This second amendment significantly altered the qualifications to require a bachelor degree in political science or business administration and four years of administrative experience, both qualifications which Penebacker easily satisfied. Complaint, p. 6. The fact that all female interviewees, including Plaintiff, met the original qualifications, while the male applicant chosen for the position clearly did not, raises a genuine issue of fact whether Penebacker was the most qualified applicant. Moreover, it raises a genuine issue whether gender animus motivated Defendant's alteration of the required qualifications to fit Penebaker's resumé. *See* Complaint, p. 5.

The Court finds that Plaintiff has met her burden of production for her disparate treatment claim under a single motive theory. Therefore, the Court DENIES Defendant's motion to dismiss Plaintiff's Title VII claim of discrimination (count I).

## II. *RETALIATION*

The same allocation of proof that governs disparate treatment claims also governs retaliation claims. *Yartzoff,* 809 F.2d at 1375. Thus, once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to defendant to articulate a legitimate, nonretaliatory explanation for its decision. If the defendant carries this burden satisfactorily, the burden shifts back to the plaintiff to show that the alleged explanation is a pretext for impermissible retaliation.

### A. *Prima Facie Case*

Proof of a prima facie case of retaliatory discharge requires a showing that (1) plaintiff engaged in a protected activity, (2) the employer subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Yartzoff,* 809 F.2d at 1375; *Wallis,* 26 F.3d at 891. Like disparate treatment claims, the evidence necessary to establish a prima facie case of retaliatory discharge is minimal. *Wallis,* 26 F.3d at 891. A plaintiff may satisfy the first two elements by demonstrating that she was fired, demoted, transferred or subjected to some other adverse action after engaging in protected activity. The causal link may be inferred from circumstantial evidence such as the employer's knowledge that the plaintiff engaged in protected activity and the proximity in time between the protected action and the allegedly retaliatory employment decision. *Yartzoff,* 809 F.2d at 1376.

Plaintiff Linville has clearly established a prima facie case of retaliatory discharge. Plaintiff engaged in protected activities both personally and in her position as Chief Steward of the Department of Education, Unit 13 Hawaii Government Employees Association. As Chief Steward, she filed

contractual grievances against Defendant. She also filed personal Title VII allegations of discrimination with the EEOC. While her grievances and Title VII claims were pending, Defendant requested that Plaintiff withdraw her complaints and take six months medical leave at reduced pay. Kane Deposition, Plaintiff's Exhibit H, Linville Deposition, Plaintiff's Exhibit G. Shortly after Plaintiff refused, she was terminated from her position of almost twenty years. Defendant's termination of Plaintiff immediately following her refusal to withdraw her complaints is sufficient evidence of a causal link between Plaintiff's protected activities and Defendant's adverse employment action to withstand Defendant's motion for summary judgment.

### B. *Nondiscriminatory Reason*

██ Defendant alleges three nondiscriminatory reasons for terminating Plaintiff: excessive tardiness, poor performance and misrepresentation of doctor's notes. Defendant has submitted documentation demonstrating that Plaintiff reported to work late at least 20 days a month during the period of January 1988 to June 1988 and that Plaintiff's absenteeism became even worse during the summer months. Defendant also submitted evidence that it had officially notified Plaintiff of her unsatisfactory job performance. Defendant further claims that Plaintiff misrepresented a doctor's report by submitting a photocopy of a doctor's note in response to defendant's requirement that she obtain an excuse from her doctor every time she reported late to work. This evidence sufficiently meets Defendant's burden of production and shifts the burden back to Plaintiff.

### C. *Pretext*

██ Plaintiff has raised a genuine issue of fact regarding whether Defendant's stated rationale for terminating her are pretextual. Defendant knew Plaintiff was ill and that

Plaintiff's absenteeism was a result of that illness. Defendant was likewise aware that Plaintiff's illness was diagnosed by several physicians and that its own physician recommended that Plaintiff be allowed to work flexible hours because of her illness. Plaintiff's Exhibit A, p. 2; B; C. During each period that Plaintiff arrived after her normal starting time, Defendant charged Plaintiff with sick leave which, according to Defendant's policy, was approved leave. Plaintiff's Exhibit A, p. 5. Moreover, the EEOC found that Plaintiff still had a balance of 484 hours of sick leave and 148.9 hours of annual leave when she was terminated. *Id.* Plaintiff has also submitted evidence that Defendant had a general policy of permitting employees to work flexible hours as the need arose. Plaintiff's Exhibit D. Thus, there is a genuine issue of fact whether Defendant's explanation that it discharged Plaintiff because of her absence from work is worthy of credence.[10]

Defendant's second reason for terminating Plaintiff was poor job performance. The EEOC noted in its letter of determination that this reason must be regarded with skepticism because there are no established performance standards for Plaintiff's position. Plaintiff's Exhibit A, p. 6. Defendant was well aware that Plaintiff had a stress-related illness. Despite this knowledge, Defendant placed increasing demands on Plaintiff and ignored her many grievances regarding these increased requirements. Because Plaintiff's decreased efficiency could have been a direct result of the negative retaliatory actions being taken against her by Defendant, there are genuine issues of fact whether it is a legitimate, nondiscriminatory reason justifying Plaintiff's termination.

The third reason given by Defendant for terminating Plaintiff was that she "misrepresented doctor's notes." This allegation stemmed from Plaintiff's use of multiple copies of an original doctor's note, which she submitted in lieu of the daily, individualized

---

10. Arbitrator Tamotsu Tanaka supported Defendant's decision to discharge Plaintiff for excessive absenteeism, unsatisfactory job performance and misuse and misrepresentation of a doctor's report. Exhibit A, p. 17, 25, 31, attached to Defendant's Reply Brief. Tanaka reasoned that excessive absenteeism is just cause for discharge even if the absences are the result of genuine illnesses. This Court's inquiry, however, is not limited to whether Defendant's proffered reason was legally a just cause for termination. This Court must also consider whether the stated reason was a pretext and whether the discharge was actually motivated by illegitimate rationale.

physician notes that Defendant was demanding against the advice of its own physician. Plaintiff submitted these copies after her physician refused to issue daily notes because he believed it was an inappropriate expectation from an employer and a misuse of the medical facility. Plaintiff's Exhibits C, L. Defendant has not submitted any evidence supporting its contention that Plaintiff represented the submitted copies of her original note as individualized, daily physician statements. Thus, it is unlikely that Defendant would actually have based a decision to terminate Plaintiff on these facts.

The Court finds that Plaintiff has met her burden of production for her retaliatory discharge claim. Therefore the Court DENIES Defendant's motion to dismiss Plaintiff's Title VII claim of wrongful termination (count VI).

### CONCLUSION

This order does not create any findings of fact for purposes of Federal Rules of Civil Procedure 56(d).

For the foregoing reasons, this Court GRANTS. Defendant's motion to dismiss Plaintiff's § 1983 claim (count V), Title IX claim (count IV) and state law claims (counts II, III, VII and VIII) and DENIES Defendant's motion to dismiss Plaintiff's Title VII claims of discrimination (count I) and retaliatory discharge (count VI).

IT IS SO ORDERED.