951 P.2d 507

**Alan Y. TAKAKI, Plaintiff–Appellant,**

**v.**

**ALLIED MACHINERY CORPORATION, a Hawai'i corporation, and Patrick J. Feyerisen, Individually and in his capacity as President of Allied Machinery Corporation, Defendants–Appellees,**

**and**

**Joe S. Bonawitz, Individually and in his capacity as Vice–President of Allied Machinery Corporation, John Does 1–10, Jane Does 1–10, Doe Business Entities 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe Unincorporated Organizations 1–10, and Doe Governmental Agencies 1–10, Defendants.**

**No. 19183.**

Intermediate Court of Appeals of Hawai'i.

Jan. 21, 1998.

Alan Y. Takaki, plaintiff-appellant, pro se on the brief.

Denis Lee and Scott I. Batterman (Bendet, Fidel, Sakai & Lee), on the brief, Honolulu, for defendants-appellees.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

We hold that Plaintiff–Appellant Alan Y. Takaki (Takaki) may not maintain an action for wrongful discharge in violation of a clear mandate of public policy, first recognized in our jurisdiction in *Parnar v. Americana Hotels*, 65 Haw. 370, 380, 652 P.2d 625, 631 (1982), because, with respect to his discharge, Hawai'i Revised Statutes (HRS) § 378–32 (1993) already evidences a public policy against terminating an employee solely because of a work injury, and HRS § 378–35 (1993) provides a remedy for violating that policy. We affirm, therefore, the April 6, 1995 order of the first circuit court (the court) granting summary judgment against Takaki on his *Parnar* claim in count three of his first amended complaint (the amended complaint).

Hence, we also affirm the court's order of summary judgment against Takaki on his claim for intentional infliction of emotional distress in count five of the amended complaint insofar as·this claim arose out of his *Parnar* allegations.

However, we vacate the court's grant of summary judgment on count ten of the amended complaint which alleged a racially[1] discriminatory discharge under the provisions of HRS chapters 378 and 368 (1993). As to this claim, we cannot determine that the court considered the elements of a prima facie case of discriminatory discharge as set forth in *Furukawa v. Honolulu Zoological Society*, 85 Hawai'i 7, 13 n. 3, 936 P.2d 643, 649 n. 3 (citations omitted), *reconsideration denied*, 85 Hawai'i 196, 940 P.2d 403 (1997).

We also vacate the court's order of summary judgment on count five of the amended complaint insofar as Takaki's claim for inten-

1. Herein we generally refer to the claim of Plaintiff–Appellant Alan Y. Takaki (Takaki) of racial

tional infliction of emotional distress arose out of his allegations of a racially discriminatory discharge. We do so because (1) HRS § 386–5 (1985), the exclusivity of remedies provision under our workers' compensation law, does not bar an employee's claim against an employer for intentional infliction of emotional distress when the employer has unlawfully discriminated against the employee in violation of HRS § 378–2 (1993), and (2) Defendants–Appellees Allied Machinery Corporation (Allied) and Patrick J. Feyerisen (Feyerisen) (collectively referred to herein as Appellees) failed to demonstrate that reasonable people would not differ on the question of whether Takaki's discharge based on alleged racial discrimination was unreasonable or outrageous so as to preclude trial on this claim.

I.

A.

On December 5, 1986, Takaki and Allied entered into a "Dealer Franchise Agreement" under which Takaki agreed to "promote and sell some of the various lines of equipment handled by Allied ... including rentals of such specified lines of equipment."

At some point during 1988, Takaki became involved in a "water-truck operation" that was not a part of Allied's business.

On August 28, 1990, while working on a site for Allied, Takaki suffered back and knee injuries which later required surgical treatment. Takaki apparently received workers' compensation benefits for these injuries.

Takaki began treatment in January 1991 with William Tsushima, Ph.D. (Tsushima) and Gordon Trockman, M.D. (Trockman) for "psychological distress." He claimed this stress was related to his back and knee injuries and the pressure to continue working while injured, allegedly applied by Defendant Joe S. Bonawitz (Bonawitz), the vice president of Allied and Takaki's supervisor, and "others" at Allied.

and/or ethnic ancestry discrimination as a claim of racial discrimination.

On April 9, 1991, after Takaki had missed a few days of work because of the alleged stress, he purportedly telephoned Allied to request that a workers' compensation claim be filed for him.

On April 15, 1991, Takaki obtained a certificate from Trockman, a physician at Straub Clinic & Hospital, indicating that Takaki was "unable to perform his usual duties" and could not return to work for an indefinite period of time.

In a letter dated April 19, 1991, Takaki informed Feyerisen, Allied's president, of Takaki's intention to file a workers' compensation claim for "unnecessary induced [sic] stress" and requested that all necessary forms be filed within seven days. Allied claimed to have received this letter on April 22, 1991.

In a letter also dated April 19, 1991, Feyerisen notified Takaki that Takaki was terminated for failure to abide by the terms of the dealer franchise agreement. The letter summarized several provisions of the dealer franchise agreement, including an agreement by Takaki to "not engage in any other business activity without the written consent of Allied." It then stated, "We have now been advised by certain customers that your actions relative to involvement outside of your responsibilities have been detrimental to [Allied] and to its management. Further, we have knowledge of your engagement of business activities in violation of the signed agreement."

### B.

Before filing the complaint in the instant action, Takaki filed several work injury-related and racial discrimination complaints with various governmental departments. A brief review of these complaints will be helpful in understanding this case.

Takaki filed a May 6, 1991 claim with the Disability Compensation Division (DCD) of the State of Hawai'i Department of Labor and Industrial Relations (DLIR) for workers' compensation benefits for "work[-]related stress." In response to the question of how his "accident" occurred, Takaki wrote that "for the last 2 1/2 years [Feyerisen] has reduced my commissions after the fact, and consistantly [sic] tried to take my current and consistant [sic] customers for no reason." This claim was denied on February 25, 1992.

On June 6, 1991, Takaki apparently filed a second workers' compensation claim with the DCD. This claim described his injury as "nervous breakdown, stress" which was caused by "harassment on the job, threats [and] cuts in pay [without] notice [and] approval." This claim was apparently denied on February 25, 1992.[2]

Also on June 6, 1991, Takaki filed a complaint with the Hawai'i Civil Rights Commission (HCRC) alleging that he was "terminated because of [his] perceived handicap [sic] status (employment induced stress)" (the HCRC handicapped discrimination complaint). Takaki checked the box marked "other" for the basis of the discrimination and typed "handicap [sic] status" next to the box.

By virtue of HRS § 368–3(1) (1993), the HCRC has jurisdiction over complaints alleging unlawful discriminatory practices as set forth in, among other statutory sections, part I of HRS chapter 378. If the HCRC's executive director determines that "there is no reasonable cause to believe that an unlawful discriminatory practice has occurred[,]" notice of this determination, along with a notice that the complainant "may bring a civil action under [HRS chapter 368,]" is sent to the complainant. See HRS §§ 368–13 and –12 (1993).

On October 10, 1991, Takaki amended his June 6, 1991 HCRC handicapped discrimination complaint. In the amended complaint, Takaki stated "I believe that I was terminated because of my perceived handicap [sic] status (employment induced stress), race (Asian), [and] my ancestry (Japanese)." To

---

2. Although a copy of this claim was attached to the summary judgment motion filed by Defendants–Appellees Allied Machinery Corporation (Allied) and Patrick J. Feyerisen (Feyerisen) (collectively Appellees), Takaki does not refer to this claim in his summary judgment affidavit, memorandum, or opening brief. The claim was dated June 6, 1991 but in the February 25, 1992 decision, it is referred to as being filed June 14, 1991.

support his claim, Takaki alleged that Feyerisen and Bonawitz "made comments which were deragatory [sic] to my race (Asian), and ancestry (Japanese)." In this complaint, Takaki also checked the boxes marked "race" and "national origin" and typed the word "ancestry" near the national origin box.

Takaki requested that the amended June 6, 1991 HCRC handicapped discrimination complaint be filed with the Equal Employment Opportunity Commission (EEOC). However, this was apparently not done.[3]

The HCRC dismissed Takaki's HCRC handicapped discrimination complaint by a letter dated September 2, 1994. This letter advised Takaki of his right to file a private lawsuit in circuit court pursuant in part to HRS § 368-12.

Also on October 10, 1991, Takaki filed a new complaint with the HCRC and EEOC,[4] alleging race, national origin, and ancestry as the bases for the discrimination (the HCRC and EEOC racial discrimination complaint). In this complaint, Takaki asserted that Allied, Feyerisen, and Bonawitz (referred to collectively herein as Defendants) had treated him differently than non-Japanese salespersons in several ways.[5] He also alleged that the verbal harassment by Feyerisen and Bonawitz "created an offensive, hostile work environment."

The HCRC dismissed Takaki's HCRC racial discrimination complaint by a second letter dated September 2, 1994. This letter also advised Takaki of his right to file a private lawsuit in circuit court pursuant in part to HRS § 368-12.

The EEOC dismissed Takaki's EEOC racial discrimination complaint by a November 10, 1994 letter which advised Takaki that he could pursue the matter further by filing a private action in federal district court.

On November 14, 1991, Takaki filed a complaint with the Enforcement Division of the DLIR, alleging that Allied violated HRS § 378-32 because Takaki believed he "was terminated solely because of [his] work injury." In pertinent part, HRS § 378-32(2) states that "[i]t shall be unlawful for any employer to ... discharge[ ] or discriminate against any of the employer's employees ... [s]olely because the employee has suffered a work injury[.]"

On August 20, 1992, Takaki amended his November 14, 1991 DLIR complaint to "add that [he] suffered a knee injury on August 28, 1990 at work" which "created much undue stress[.]" He again stated that he believed he "was terminated solely because of [his] work injury." Takaki represented that this complaint was suspended at some point in time before Appellees filed their summary judgment motion.[6]

## C.

Takaki filed a ten-count complaint against Defendants on April 6, 1993. On May 14, 1993, Appellees filed their answer and a counterclaim seeking damages and attorneys' fees and costs. Takaki answered Appellees' counterclaim on June 24, 1993.

On October 29, 1993, the court dismissed Bonawitz for lack of service, pursuant to Rules of the Circuit Court of the State of Hawai'i Rule 28.

As previously recounted, Takaki received his "right to sue" letters from the HCRC and the EEOC on September 2, 1994 and November 10, 1994, respectively.

Consequently, on December 1, 1994, Takaki filed the amended complaint.[7] In this

---

3. Although Takaki requested that the Hawai'i Civil Rights Commission (HCRC) complaint be filed with the Equal Employment Opportunity Commission (EEOC), an EEOC case number was not typed on the complaint.

4. Takaki indicated on this complaint that it should be filed with the EEOC and an EEOC case number was typed on it.

5. In particular, Takaki asserted that Defendant Joe S. Bonawitz (Bonawitz) made racially dis-

criminatory comments, that Takaki's paychecks were late and his commissions reduced, and that Feyerisen and Bonawitz attempted to discourage customers from dealing with Takaki.

6. The outcome of the suspension is not clear from the record on appeal and is not necessary to our disposition.

7. On December 1, 1994, Takaki and Appellees stipulated that Takaki would be allowed to file a

complaint, Takaki asserted jurisdiction pursuant to HRS chapters 368 and 378, and stated that he had complied with the administrative prerequisites of these chapters.

The amended complaint stated the same claims as the original complaint and added a count alleging discrimination based on race and/or ethnic ancestry. Appellees filed an answer to the amended complaint on December 21, 1994.

On January 24, 1995, Appellees filed a motion for summary judgment pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 56. On February 24, 1995, Takaki filed a memorandum in opposition to Appellees' motion. Appellees filed their reply memorandum in support of the summary judgment motion on February 28, 1995.

In an April 6, 1995 order, the court granted Appellees' motion for summary judgment and dismissed all of the claims in the amended complaint. On April 28, 1995, Appellees and Takaki stipulated to a dismissal of Appellees' counterclaim without prejudice.

On May 30, 1995, Appellees filed a motion for attorneys' fees and costs, arguing that they were entitled to attorneys' fees pursuant to HRS § 607–14 (Supp.1994) and costs under HRCP Rule 54(d).

In a July 18, 1995 order, the court granted Appellees' motion, awarding $44,363 for attorneys' fees and $819.96 for costs.

Also on July 18, 1995, the court entered judgment in favor of Appellees and against Takaki.

On August 14, 1995, Takaki filed a notice of appeal.

## II.

An award of summary judgment is reviewed "under the same standard applied by the circuit court." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

first amended complaint (the amended com-

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citation and internal quotation marks omitted).

■ In his opening brief, Takaki argues that the court erred in granting summary judgment on count three, wrongful discharge in violation of public policy; count five, intentional infliction of emotional distress; and count ten, racial discrimination in violation of HRS chapters 378 and 368, of his amended complaint. We do not address the award of summary judgment on the remaining counts in Takaki's amended complaint because he has not presented any argument on these counts. *See Loui v. Bd. of Medical Examiners,* 78 Hawai'i 21, 29 n. 19, 889 P.2d 705, 713 n. 19 (1995).

## III.

■ In the third count of his amended complaint labeled "DISCHARGE IN VIOLATION OF PUBLIC POLICY[,]" Takaki alleged that his termination by Defendants "constitute(s) the tort of wrongful termination, being in violation of clear mandates of public policies, including, but not limited to, retaliatory terminations in violation of state statutes, such as [HRS § 378–32]." HRS § 378–32 provides in pertinent part:

> It shall be unlawful for any employer to suspend, *discharge,* or discriminate against *any of the employer's employees ... [s]olely because the employee has suffered a work injury* which arose out of and in the course of the employee's employment with the employer and which is compensable under [HRS] chapter 386 [ (1983) ] unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing.

(Emphases added.)

For this count, Takaki relied on *Parnar. Parnar* held that an exception to the employment at will doctrine applied where "an employer['s] ... discharge of an employee vio-

plaint).

lates a clear mandate of public policy."[8] *Parnar*, 65 Haw. at 380, 652 P.2d at 631. In *Parnar*, the discharge was alleged to have contravened the public policy against "retaliatory discharge[s] in apparent furtherance of antitrust violations[.]" *Id.* Takaki argues that the court was "clearly in error" in granting summary judgment because in discharging Takaki, Allied violated the public policy against discharging an employee for a compensable work injury, which is embodied in Hawai'i's workers' compensation law, HRS chapter 386.

We cannot agree with this argument because the supreme court has limited its holding in *Parnar* to situations where a remedy is not provided for violation of the "clear" public policy involved. *Parnar* was

intended to apply to a "narrow class of cases" where the wrongful discharge action is seen as necessary to effectuate the public policy at stake. *If, however, the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary.*

*Ross v. Stouffer Hotel, Co.*, 76 Hawai'i 454, 464, 879 P.2d 1037, 1047 (1994) (emphasis added) (quoting *Lapinad v. Pacific Oldsmobile–GMC*, 679 F.Supp. 991 (D.Hawai'i 1988)).

We believe that the public policy against terminating an employee solely because that employee has suffered a compensable work injury is evidenced in HRS § 378–32. In enacting HRS § 378–32, the legislature modified the employment at will doctrine to establish a public policy of

preserv[ing] the integrity of the workers' compensation law by protecting employees from retaliatory discharges. If an employer could, with impunity, coerce an employee into forgoing his [or her] rights, the employer would be able to destroy the function of the law and circumvent an obligation imposed upon him [or her] by the legislature.

*Puchert v. Agsalud*, 67 Haw. 25, 35, 677 P.2d 449, 457 (1984), *appeal dismissed sub nom. Pan Am. World Airways v. Puchert*, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985).

A remedy for wrongful discharge under HRS § 378–32 is found in HRS § 378–35. HRS § 378–35 provides that

[i]f the [DLIR] finds, after a hearing, that an employer has unlawfully suspended, discharged or discriminated against an employee in violation of [HRS § ] 378–32, the [DLIR] may order the reinstatement, or reinstatement to the prior position, as the case may be, of the employee with or without backpay or may order the payment of backpay without any such reinstatement.

Hence, "provision of a further remedy under the public policy exception" established in *Parnar* "is unnecessary." *Ross*, 76 Hawai'i at 464, 879 P.2d at 1047. In sum, because the statutory provisions evidencing our public policy against discharges for compensable work injuries provide a remedy for such discharges, Takaki's *Parnar* claim cannot be maintained.

We are compelled to this conclusion by *Ross*. In *Ross*, the employer enforced a policy prohibiting relatives from working in the same division of the company. *Id.* at 455, 879 P.2d at 1038. The plaintiff there, whose wife worked with him in the same division, alleged that he was discharged for discrimination based on his marital status. The plaintiff claimed that his termination violated HRS § 378–2 (1985), which in part prohibits discrimination based on marital status and, under *Parnar*, violated a state public policy against discrimination based on marital status. *Id.* at 455, 464, 879 P.2d at 1038, 1047.

In holding that the *Parnar* claim was properly dismissed, the supreme court reasoned that "by making the discharge of an employee 'because of . . . [his or her] marital status' unlawful [under] HRS § 378–2(1), and

---

**8.** Because the third count is based on *Parnar v. Americana Hotels*, 65 Haw. 370, 652 P.2d 625 (1982), and not on Hawai'i Revised Statutes (HRS) § 378–32 (1993), we do not address Ap-

pellees' argument that Takaki's wrongful termination claim "under" HRS § 378–32 failed as a matter of law.

providing a remedial scheme for that discriminatory practice,[9] the legislature itself has provided the means for enforcing the public policy that [the plaintiff] seeks to vindicate through his *Parnar* claim." *Id.* The court explained that "even before *Parnar* was decided, the legislature had already done what a *Parnar* claim is designed to do, that is, modify the employment at-will doctrine to further an important public policy." *Id.*

HRS §§ 378–32 and 378–35 "evidence the public policy" against terminating employees for compensable work injuries and the remedies for redress of its violation, just as HRS §§ 378–2 and 378–5 (1985) "evidence the public policy" and remedial scheme for discrimination based on marital status. *Id.* at 464, 879 P.2d at 1047. The supreme court in *Ross* held that "[a]bsent a clear expression of legislative intent to the contrary, ... it is both unnecessary and unwise to permit a judicially created cause of action ... to be maintained where the policy sought to be vindicated is already embodied in a statute providing its own remedy for its violation." *Id.* (emphasis added) (footnote omitted). A clear expression of legislative intent to the contrary in HRS chapter 378, part III is not present. *See id.* n. 11 (contrasting such an intent expressed in HRS § 378–69 (Supp. 1992) for HRS chapter 378, part V).

Therefore, we affirm the summary judgment award on count three of the amended complaint.

## IV.

■ Before discussing the fifth count of Takaki's amended complaint, we examine count ten. In count ten, Takaki apparently claimed that in discharging him, Defendants owed a duty, under HRS chapters 378 and 368, to not discriminate against him on the basis of race and/or ethnic ancestry. HRS § 378–2 (1993) provides, in relevant part:

It shall be an unlawful discriminatory practice:

(1) *Because of race*, sex, sexual orientation, age, religion, color, *ancestry*, dis-

ability, marital status, or arrest and court record:

(A) *For any employer* to refuse to hire or employ or *to bar or discharge from employment*, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment.

(Emphases added.) Takaki alleged that Defendants violated such a duty by terminating him, "thereby depriving [him] of equal employment opportunities guaranteed by the law." The complaint did not state any other allegations of racial discrimination.

### A.

We conclude that summary judgment on count ten was improper because, on the state of the record, it is not apparent that the appropriate elements of a discriminatory employment discharge claim based on race or ancestry were considered.

### 1.

We believe the court looked to "matters outside the pleadings" in ruling on Appellees' motion, and thus the court considered the motion as a summary judgment motion. *See* HRCP Rule 12(b). However, Appellees' argument on count ten in the memorandum in support of their motion was based primarily on the contention that the amended complaint failed to state a claim for relief on that count. Relying on federal case law interpreting federal statutes, Appellees urged that Takaki's "bare and unsupported assertion [in the amended complaint] [wa]s not sufficient to maintain a claim for racial discrimination against Defendants."

Appellees based this argument on certain federal court cases which have adopted a "more stringent pleading rule [for] civil rights cases" under federal statutes. *Trader v. Fiat Distributors, Inc.*, 476 F.Supp. 1194, 1198 (D.Del.1979). We are not aware of any Hawai'i decision adopting a higher standard of pleading for racial discrimination claims

9. HRS § 378–5(f) (1985) set forth the remedial scheme discussed in *Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 463–64, 879 P.2d 1037, 1046–47

(1994). HRS § 378–5 (1993) currently provides for remedies to be awarded by the HCRC and/or the circuit court for violations of HRS chapter

arising under HRS § 378–2. We further note the following language quoted with approval by the Hawai'i Supreme Court:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he [or she] bases his [or her] claim. To the contrary, *all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified "notice pleading" is made possible by the liberal opportunity for discovery* and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

*Hall v. Kim,* 53 Haw. 215, 219, 491 P.2d 541, 544 (1971) (emphasis added) (quoting *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

In his opposition memorandum, Takaki countered that he was not required to do more than make "a short and plain statement of the claim showing that the pleader is entitled to relief." HRCP Rule 8(a)(1). Takaki also asserted he had established a prima facie case of racial discrimination:

> [T]he subject claim of racial discrimination is one upon which relief can be granted, *being a prima facie case of disparate treatment,* which may be established with a combination of direct, circumstantial, and statistical evidence of discrimination. *Senqupta v. Morrison–Knidsen Co.,* [sic] 804 F.2d 1072, 1075 (9th Cir.1986). Similarly, *there is no single, rigid formulation of the prima facie case,* and the prima facie standard should be flexible to suit the facts of the individual case. *Hagans v. Andrus,* 651 F.2d 622, 624–26 (9th Cir.1981).

(Emphases added.) Reiterating in their reply memorandum that Takaki failed to state

a claim for racial discrimination, Appellees did not specifically address whether Takaki had established a prima facie case of disparate treatment. In their memoranda, neither Takaki nor Appellees enumerated any elements of a prima facie case of disparate treatment for the court to consider in deciding Appellees' motion.

On appeal, Takaki has set forth several formulations of the prima facie case for a disparate treatment claim [10] from other jurisdictions. Appellees asserted in their answering brief that Takaki failed to establish a prima facie case of disparate treatment under any of the alternatives he discussed. However, on the record before us, we cannot determine that the parties' arguments on this point were ever presented to the court.

2.

At the time Appellees' motion for summary judgment was considered, it appears that no definition of a prima facie case for employment discharge based on discrimination in violation of HRS § 378–2 [11] had been adopted by the Hawai'i courts. Since then, the Hawai'i Supreme Court has noted:

> The federal circuits generally agree on the following three-part test for a prima facie case involving [discriminatory] discharge: (1) The plaintiff must be a member of a protected class; (2) the plaintiff must be demonstrably capable of performing his [or her] employment duties; and (3) the employer, after discharge, sought people with the same qualifications to fill the position.

*Furukawa,* 85 Hawai'i at 13 n. 3, 936 P.2d at 649 n. 3 (citations omitted).

In *Furukawa,* the supreme court considered a directed verdict entered against a plaintiff who had alleged racial discrimination in violation of HRS § 378–2(1) (Supp.1996).[12] *Id.* at 9, 936 P.2d at 645. The circuit court

378, part I, in which HRS § 378–2 (1993) is included.

**10.** In his opening brief, Takaki also discussed the elements for a prima facie case of "racial harassment" or "hostile work environment." We do not consider this claim, for Takaki represented to the court in his opposition memorandum that "the subject claim of racial discrimination is ... a prima facie case of disparate treatment...." Takaki apparently raised a claim of racial harass-

ment with the HCRC and the EEOC, but, as pointed out by Appellees, did not pursue such a claim again until this appeal.

**11.** *See* part IV *supra.*

**12.** The versions of HRS § 378–2 in the 1985 and 1993 codifications and the 1996 Supplement are not materially different for purposes of our opinion.

directed a verdict against the plaintiff because the court believed that the plaintiff "ha[d] not sustained his burden with respect to make [sic] a prima facie case of this matter." *Id.* at 12, 936 P.2d at 648. In discussing the evidence put forth in an employment discrimination case, the supreme court noted that " '[t]he burden of establishing a prima facie case of disparate treatment is not onerous[,]' " and " 'the amount [of evidence] that must be produced is very little.' " *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), and *Sischo-Nownejad v. Merced Community College District*, 934 F.2d 1104, 1108 (9th Cir.1991)).

The supreme court also summarized the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) framework for the development of evidence in an employment discrimination case. *Furukawa*, 85 Hawai'i at 12–13, 936 P.2d at 648–49. Under that framework, the plaintiff first has the burden to establish a prima facie case and show that he or she was discriminated against based on "a protected characteristic." *Id.* at 12, 936 P.2d at 648. Second, if the plaintiff meets that burden, then the defendant must "proffer a legitimate, nondiscriminatory explanation of the adverse employment action." *Id.* Third, the plaintiff must then demonstrate that the defendant's proffered reasons were "pretextual." *Id.* "The burden of persuasion of course remains at all times on the plaintiff." *Id.* at 12–13, 936 P.2d at 648–49.

The supreme court further explained that not all employment discrimination plaintiffs will prove, or should be required to prove, disparate treatment in the same way:

Although proof regarding similarly situated employees outside the protected class may be one way of raising an inference of intentional discrimination, *it is not the only way.* To state that a plaintiff may

never establish a prima facie case if the plaintiff fails to produce evidence that similarly-situated employees outside the protected class were promoted [or received other favorable treatment], restricts unfairly the circumstances from which discrimination may be inferred. Such a requirement ... emphasizes one way of proving intentional discrimination instead of properly focusing on the pivotal issue in disparate treatment cases—whether a *particular individual* was discriminated against and why.

*Id.* at 15, 936 P.2d at 651 (quoting *Heard v. Lockheed Missiles & Space Co.*, 44 Cal. App.4th 1735, 52 Cal.Rptr.2d 620, 632 (1996) (emphasis in original)).

### B.

For the reasons previously stated, we cannot ascertain from the record what elements of a claim or test for a HRS § 378–2 violation the court may have considered in granting summary judgment on count ten. As a result, we vacate the award of summary judgment on that count and remand for application of the principles enunciated by the supreme court in *Furukawa*.

### V.

 The fifth count of Takaki's amended complaint contended that Defendants intentionally inflicted emotional distress upon him.[13]

### A.

In his amended complaint, Takaki alleged that his termination "constitute[d] extreme and outrageous behavior which exceed[ed] all bounds usually tolerated by decent society, having been done with malice and with the intent to cause, or the knowledge that it would cause, severe mental stress to [Takaki]." The third and tenth counts of his

---

13. The tort of intentional infliction of emotional distress has three elements: (1) the act must have been intentional; (2) the act must have been unreasonable; and (3) " 'the actor should have recognized that the act was likely to result in illness.' " *Dunlea v. Dappen*, 83 Hawai'i 28, 38, 924 P.2d 196, 206 (1996) (quoting *Marshall v. University of Hawaii*, 9 Haw.App. 21, 38, 821

P.2d 937, 947 (1991)). "An act is unreasonable if it is without just cause or excuse and beyond all bounds of decency[.] In other words, the act complained of must be outrageous, as that term is employed in the *Restatement (Second) of Torts* § 46 (1965)." *Ross*, 76 Hawai'i at 465, 879 P.2d at 1048 (internal quotation marks, citations, and footnote omitted).

amended complaint respectively claimed that his termination was in violation of the public policy against discharges for a compensable work injury expressed in HRS § 378–32, and was based on racial discrimination in violation of HRS § 378–2 and HRS chapter 368. We assume then that, as pled, Takaki's intentional infliction of emotional distress claim, resulting from his termination, is premised on these dual claims.

We have held, *supra* part III, that summary judgment was properly granted on the former claim. Accordingly, we view Takaki's claim for intentional infliction of emotional distress as relating solely to the latter claim, alleging racial discrimination in violation of HRS § 378–2.

### B.

■ Appellees generally contend that HRS § 386–5,[14] the exclusivity of remedies provision of the workers' compensation law, bars an employee from bringing a civil action for intentional infliction of emotional distress against his or her employer. Appellees rely on *Marshall v. University of Hawaii*, 9 Haw. App. 21, 37–38, 821 P.2d 937, 946–47 (1991), in which this court held that an employee could bring such a claim *only* under HRS chapter 386, our workers' compensation law.

While not expressly overruling *Marshall*, the supreme court has recently held that a civil claim against an employer for intentional infliction of emotional distress, brought under HRS chapter 378, part I, is not barred by HRS § 386–5. *Furukawa*, 85 Hawai'i at 16–18, 936 P.2d at 652–54. After resigning from his job because of his "[f]eeling that the conditions of his employment had become 'intolerable,'" the plaintiff in *Furukawa* sued his employer under HRS § 378–2(1) and HRS chapter 368, alleging race and gender

discrimination. *Id.* at 9, 11, 936 P.2d at 645, 647. The trial court excluded evidence of the plaintiff's emotional distress, on the ground that HRS § 386–5 barred him from making such a claim under either HRS § 368–17 (1993)[15] or HRS § 378–5 (1993). *Id.* at 16–17, 936 P.2d at 652–53.

> The supreme court reversed, holding that the workers' compensation scheme serves to bar a civil action for physical and emotional damages resulting from work-related injuries and accidents. However, Furukawa's claims are not based on any such "accident," but rather on the alleged intentional conduct of [the defendants]. *Cf. Wharton v. Hawaiian Elec. Co., Inc.*, 80 Hawai'i 120, 123 n. 2, 906 P.2d 127, 130 n. 2 (1995) (affirming denial of workers [sic] compensation stress claim because injury arose out of worker's suspension for misconduct, but noting that *"[i]f an employer's actions constitute unlawful discrimination ..., an injured employee may invoke rights in other forums. See, e.g.,* HRS §§ 378–2 and 378–32").

*Id.* at 18, 936 P.2d at 654 (emphasis added). Thus, the supreme court has recognized that an employee may bring an action against his or her employer for intentional infliction of emotional distress caused by discrimination in violation of HRS §§ 378–2, and that such an action is not barred by the exclusivity provision of HRS § 386–5. *Cf. Hough v. Pacific Ins. Co.*, 83 Hawai'i 457, 465, 927 P.2d 858, 866 (1996) (holding that the plaintiff was not barred by HRS § 386–5 from seeking common law tort remedies against his insurer for injuries caused by the insurer's "'outrageous and intentional denial of medical benefits and disability payments'" because such injuries were not "'work injuries'" within the scope of HRS chapter 386).

14. HRS § 386–5 (1985) stated:
 **Exclusiveness of right to compensation.** The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.

In 1992, the legislature added the following exception to this statute: "except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought." *See* 1992 Haw. Sess. L. Act 275, § 2 at 722.

15. HRS § 368–17(a) (1993) sets forth the remedies that the HCRC or the circuit court may order under HRS chapter 368.

Takaki asserted in his opposition memorandum that his emotional distress was caused by his termination, and therefore was not work-related or barred by HRS § 386–5.[16] Accordingly, *Furukawa* would permit Takaki to maintain an action against Appellees for intentional infliction of emotional distress caused by terminating him in violation of HRS § 378–2.

### C.

■ Appellees claimed that the termination of Takaki "hardly [rose] to the level of outrageous and/or unreasonable conduct sufficient to support a claim for intentional infliction of emotional distress, and [thus] that claim should be dismissed."

■ " 'The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury.' " *Ross*, 76 Hawai'i at 465, 879 P.2d at 1048 (quoting *Wong v. Panis*, 7 Haw. App. 414, 421, 772 P.2d 695, 700 (1989)). Takaki alleged in count ten that his termination was motivated by racial discrimination. In his affidavit in opposition to the motion for summary judgment, Takaki stated that "quite often" "his immediate supervisor" called him " 'lousy f——king Jap.' " Appellees have maintained, on the other hand, that Takaki was terminated because he was not performing under the terms of the dealer franchise agreement. We cannot say that reasonable people would not differ on the question of whether Defendants' act of terminating Takaki in this alleged context of racial discrimination was unreasonable or outrageous. Thus, on the record, this issue was improperly decided on summary judgment.

We vacate, therefore, the award of summary judgment on count five of Takaki's amended complaint as it relates to his claim of termination based on racial discrimination,

*see supra* part V.A, and remand this claim to the court.

### VI.

For purposes of remand, we address Appellees' remaining arguments on Takaki's racial discrimination claim.

### A.

■ Appellees urge this court, as they argued below, to uphold the grant of summary judgment on count ten because, "[a]fter conducting a thorough investigation of [Takaki's racial discrimination] claim over a three year period, the HCRC and the EEOC concluded that there was no basis for the claim and dismissed the claim." The courts are not, however, bound by the findings of the HCRC and EEOC. To hold otherwise would nullify HRS § 368–12, which permits a complainant to bring a civil action on his or her discrimination claim after receiving a right to sue notice from the HCRC.

### B.

In discussing Takaki's racial discrimination claim, Appellees relied in part on exhibits 14 and 15 attached to their memorandum in support of the summary judgment motion. Exhibits 14 and 15 purport to be Takaki's November 14, 1991 complaint and the August 20, 1992 amended complaint, respectively, filed against Defendants with the Enforcement Division of the DLIR. Appellees pointed to the identical statement in both complaints of "I believe the employer violated HRS Section 378–32 because I was terminated *solely* because of my work injury[,]" (emphasis added), to demonstrate that there was no genuine issue of material fact concerning the non-racial discrimination reason for Takaki's termination. The exhibits were "sworn to" by Appellees' counsel in an affidavit stating they were "true and correct" copies of the originals.

---

**16.** Appellees have argued that this assertion was precluded by Takaki's prior sworn statements in an unrelated action for workers' compensation benefits. We do not believe that Takaki's prior sworn statements about the distress he suffered as a result of his August 28, 1990 work injury are inconsistent with his claim of emotional distress caused by his termination because his termination could itself have resulted in further emotional distress.

■ While we have no reason to doubt counsel's representation, we are constrained to note that exhibits 14 and 15 were not admissible under HRCP Rule 56(e),[17] which provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." These "papers" must be admissible in evidence, for a motion for summary judgment may be decided only on the basis of admissible evidence. *Munoz v. Yuen,* 66 Haw. 603, 605, 670 P.2d 825, 826 (1983) (per curiam). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rules of Civil Procedure] Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil* § 2722, at 58–60 (2d ed.1983) (footnotes omitted); *see also Fuller v. Pacific Medical Collections,* 78 Hawai'i 213, 224, 891 P.2d 300, 311 (App.1995). It does not appear that the foregoing requirements for consideration of exhibits 14 and 15 were satisfied.

■ We will, however, consider exhibit 15 because Takaki referred to this exhibit in his own affidavit attached to his opposition memorandum. *See Tradewind Ins. Co. v. Stout,* 85 Hawai'i 177, 181, 938 P.2d 1196, 1200 (App.) (considering facts that the parties apparently agreed to as indicated in their memoranda and statements at the summary judgment hearing), *cert. denied,* 85 Hawai'i 81, 937 P.2d 922 (1997).

■ Appellees took differing positions with respect to the statement relied on in exhibit 15. In arguing for the dismissal of count three, Appellees stated, "On a number of occasions, [Takaki] has admitted that he was not terminated *solely* because he suffered a work injury. . . ." (Emphasis in original.) In arguing for the dismissal of count ten, Appellees contended that Takaki's "binding judicial admissions"[18] in exhibits 14 and 15 about the "sole" cause of his termination should preclude his racial discrimination claim.

Takaki's affidavit in opposition to Appellees' motion, however, stated that "[h]e did sometimes say that he would not work for his immediate supervisor, [Bonawitz], especially after [Bonawitz] called [Takaki] 'names,' such [as]. . . . 'lousy f——king Jap,' and so on, which was quite often." We are mindful that "the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion," *Miller v. First Hawaiian Bank,* 61 Haw. 346, 348, 604 P.2d 39, 41 (1979), and we instruct the court on remand to view Takaki's affidavit in such a light.

## VII.

Based on the foregoing, we affirm the July 18, 1995 judgment on count three of Takaki's amended complaint and on count five, insofar

---

17. Hawai'i Rules of Civil Procedure Rule 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth *such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(Emphasis added.)

18. " 'A judicial admission is a formal statement, either by [a] party or his or her attorney, *in [the] course of [a] judicial proceeding* [that] removes an admitted fact from [the] field of controversy. It is a voluntary concession of fact by a party or a party's attorney *during judicial proceedings.' " Han v. Yang,* 84 Hawai'i 162, 174 n. 18, 931 P.2d 604, 616 n. 18 (App.1997) (emphasis added) (quoting 29A *Am.Jur.2d Evidence* § 770, at 137 (1994) (footnotes omitted)). Hence, we do not believe that *Takaki's* statements in Exhibits 14 and 15, made outside of court, constituted "judicial" admissions.

as it relates to his *Parnar* claim. We vacate the July 18, 1995 judgment on count five, insofar as it applied to a racially discriminatory discharge, and on count ten. In light of our disposition of counts five and ten, we also vacate the award of attorneys' fees and remand for appropriate determination of that issue.