JERALD H. SMITH and KATHLEEN SMITH, Plaintiffs–Appellants, v. CHANEY BROOKS REALTY, INC., a Hawai'i corporation, dba CHANEY BROOKS & COMPANY, and ROYAL KAHANA ASSOCIATION OF APARTMENT OWNERS, Defendants–Appellees, and JOHN DOES 2–10, JOHN DOE PARTNERSHIPS 1–10, JOHN DOE CORPORATIONS 1–10, and JOHN DOE GOVERNMENTAL ENTITIES 1–10, Defendants

NO. 15876

(CIV. NO. 90–0385(1))

JANUARY 21, 1994

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE AIONA, IN PLACE OF ASSOCIATE JUDGE WATANABE, RECUSED

OPINION OF THE COURT BY HEEN, J.

Plaintiff–Appellant Jerald H. Smith (Jerald) and Kathleen Smith (Kathleen), husband and wife (collectively Plaintiffs where appropriate), appeal from summary judgments (Judgments) entered in favor of Defendant–Appellee Association of Apartment Owners of the Royal Kahana (Association) on December 12, 1991, and Defendant–Appellee Chaney Brooks Realty, Inc., dba Chaney Brooks & Co. (Chaney), Royal Kahana Condominiums' (RKC) "managing agent" for "fiscal affairs" (collectively Defendants where appropriate) on January 2, 1992. We vacate both Judgments and remand for further proceedings.

## I.

On November 23, 1987, Jerald was hired as RKC's assistant manager on Maui by Thomas Jewell (Jewell), RKC's resident manager. After several months on the job, Jerald, believing that Kathleen was covered by Association's employees' medical insurance policy, submitted a bill for her medical treatment and requested payment by Association's medical insurance carrier. Jerald's ensuing paycheck, dated July 6, 1988, showed a deduction of $141.08 for "HMSAF"[1] which had never been withheld

---

[1] We assume HMSAF refers to the medical insurance deduction.

from previous paychecks.[2]   When Jerald questioned the new resident manager (Jewell's replacement) about the deduction, Jerald was told to ask Chaney about it.  When Jerald contacted Chaney, he was told that Chaney had mistakenly failed to deduct the $141.08 from his previous paychecks for Kathleen's coverage and that the deductions would be made thereafter.  Jerald directed Chaney to cancel the coverage and reimburse him the amount deducted.  On July 15, 1988, Jerald's employment was terminated.

On August 5, 1991, Plaintiffs filed an amended complaint, alleging that Jerald had contracted with Defendants to be RKC's assistant manager, and that Defendants had unlawfully conspired to deprive him of the benefits of his employment "in retaliation for his inquiry into a paycheck deduction."[3]

On November 4, 1991, and November 6, 1991, respectively, Association and Chaney filed separate motions for summary judgment.  Association claimed that Jerald's employment was terminable at will and that Jerald was terminated for misconduct, insubordination, and unsatisfactory work performance.  Chaney asserted that (1) it was not Jerald's employer and therefore was not liable for any injury Jerald suffered from his discharge; and (2) even if it were Jerald's employer, Jerald's employment was terminable at will and his discharge did not fall within the

---

[2] Plaintiff–Appellant Jerald H. Smith's (Jerald) paystub in evidence shows the above deduction.  However, in his affidavit and his deposition, respectively, Jerald claimed that $147.00 and $150.00 had been deducted.

[3] Kathleen Smith claimed "loss of consortium and a diminution of the marital relationship."

limitations on an employer's power to discharge such an employee.

In opposing the motions, Jerald submitted his affidavit and transcripts of his tape recorded conversations with a Chaney employee and RKC's resident manager. The telephone conversations occurred shortly after Jerald's termination and indicated that Jerald was discharged because he did not "go through the [proper] chain of command" and because he had inquired about the payroll deduction. Although the statements in the telephone conversations are hearsay, Rule 801, Hawai'i Rules of Evidence (HRE), Hawai'i Revised Statutes (HRS) Chapter 626 (1985), we deem them to be admissible under Rule 803(a)(2)(B), HRE.[4]

After a hearing, the lower court entered orders (Orders) granting both motions; the Judgments followed. In almost identical language, the Orders concluded that Jerald's employment was terminable at will and that he "could be terminated or discharged with or without cause." Additionally, the Orders stated that "[e]ven assuming that [Jerald] was terminated solely due to his inquiry with regard to payroll deductions, [Jerald's] alleged reason for termination does not violate a clear mandate of

---

[4] Rule 803(a)(2)(B), Hawai'i Rules of Evidence, Hawai'i Revised Statutes Chapter 626 (1985) reads as follows:

**Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(a) Admissions.

\* \* \*

(2) Vicarious admissions. A statement that is offered against a party and was uttered by . . . (B) his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]

public policy. No exception to the termination at will doctrine is applicable to [Jerald]" [5] (citation omitted).

## II.

Appellate review of a lower court's decision granting a summary judgment motion is governed by the same standard as that employed by the trial court. *Beamer v. Nishiki*, 66 Haw. 572, 670 P.2d 1264 (1983). The question is whether, after thoroughly reviewing the record and considering the evidence in the light most favorable to the non–moving party, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. *Arimizu v. Financial Sec. Ins. Co.*, 5 Haw. App. 106, 679 P.2d 627 (1984).

## III.

On appeal, Jerald argues that the lower court erred in concluding that his discharge did not violate the public policy underlying HRS Chapter 388 (1985 and Supp. 1992). Jerald asserts that (1) Chapter 388's purpose is to supply the employee with the information necessary to determine if the employer is fully compensating the employee; (2) in accordance with Chapter 388's policy, he had the right to inquire into the accuracy of his paycheck deductions; and (3) his discharge violated the statute's policy.

---

[5] The lower court did not consider whether Chaney was Jerald's employer or Jerald's contention that, even if Chaney was not his employer, Chaney was liable for tortiously interfering with his employment contract with Association. Likewise, the parties have not addressed those questions on appeal. For those reasons we cannot consider those issues and leave them to be decided on remand.

Chaney and Association argue that Jerald waived the public policy question because he did not raise it in the lower court. However, Jerald's memorandum in opposition to the summary judgment motions did discuss Chapter 388's provisions, and the transcript of the motions hearing indicates that Jerald's counsel asked the court to examine the provisions of "388–1." Moreover, the court's oral statement at the hearing indicates that it clearly understood Jerald's argument to be that (1) HRS Chapter 388's legislative policy was to enable employees to inquire about their payroll deductions and (2) Jerald's discharge violated that policy. The record is sufficient to preserve the question for review.

We reject Chaney's argument that Jerald has challenged only the lower court's oral findings and not the Orders or the Judgments. Jerald's notice of appeal and opening brief clearly state that he challenges both Orders and both Judgments.

Association argues that Jerald's opening brief fails to assert that any genuine issues of material fact exist in this case. However, the briefs and the record show that the reason for Jerald's discharge is a genuine issue of material fact. Notably, Association's answering brief states: "Defendants–Appellees do not admit and contest the fact that JERALD H. SMITH was fired because he questioned the deduction."

In *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982), our supreme court adopted the principle established in *Petermann v. International Bhd. of Teamsters*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959): an employer's generally unlimited right to discharge an at will employee does not extend to a termination that conflicts with the state's public policy. Our supreme court, however, carefully specified that this limitation applies

to a discharge that violates a "clear mandate of public policy."

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.

*Parnar* at 380, 652 P.2d at 631.

> The term "public policy" is inherently not subject to precise definition . . . By "public policy" *is intended that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good*[.]

(Emphasis in original.) S. Ichinose, *Hawai'i's Supreme Court Recognizes Tort of Retaliatory Discharge of an At–Will Employee*, XVII Haw. B. J., Vol. 2, 123, 124 n.16 (1982) (quoting *Petermann*, 174 Cal. App. 2d at 188, 344 P.2d at 27).

Those courts that have adopted the public policy exception have applied it to actions against an employer by an at will employee who was discharged for: (1) refusing to commit an unlawful act, such as refusing to give false testimony at a trial or administrative hearing; (2) performing an important public obligation, such as jury duty, whistle blowing, or refusing to violate a profes sional code of ethics; and (3) exercising a statutory right or

privilege, such as filing a worker's compensation claim. D. Perry, *Deterring Egregious Violations of Public Policy: A Proposed Amendment to the Model Employment Termination Act*, 67 Wash. L. Rev. 915, 917–18 (1992).

Citing *Hew–Len v. F. W. Woolworth*, 737 F. Supp. 1104 (D. Haw. 1990), and *Lapinad v. Pacific Oldsmobile–GMC, Inc.*, 679 F. Supp. 991 (D. Haw. 1988), Association argues that, regardless of the policy underlying HRS Chapter 388, Jerald is limited to the statutory remedies provided by that chapter and cannot recover in a common law action for wrongful discharge. Association contends that HRS §§ 388–10 and –11 provide exclusive remedies that preclude Jerald's action here. However, Association's reliance on *Hew–Len* and *Lapinad* is misplaced because those cases involved HRS Chapter 378, this state's employment discrimination statute. The court in those cases held that Chapter 378's provisions afforded a sufficient remedy for wrongful discharge, thus barring the employee's resort to the common law action.[6]

As a general rule, the common law remedy for wrongful discharge is precluded only when the statutory provision relied upon as a bar to the action provides a sufficient remedy in itself, making the creation of an additional common law remedy unnecessary. *See Jones v. Industrial Electric–Seattle*, 53 Wash. App. 536, 768 P.2d 520 (1989).

---

[6] "Where the legislature has created a statutory remedy for a *wrongful discharge*, that remedy is exclusive." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 576 n.17, 335 N.W.2d 834, 842 n.17 (1983) (citing *Ross v. Ebert*, 275 Wis. 523, 528, 82 N.W.2d 315, 318 (1957)) (emphasis added).

Our supreme court has generally recognized that a statutory remedy is "merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication." *Watson v. Brown*, 67 Haw. 252, 256, 686 P.2d 12, 15 (1984). Our appellate courts have not had a prior occasion to apply that precept to a wrongful discharge action; however, the courts of other jurisdictions have done so. In those courts, the decision has turned on the legislative intent of the statute.

Thus, in *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981), the New Jersey Supreme Court held that the state's worker's compensation statute did not preclude an employee from pursuing the common law remedy, stating that "[i]f the Legislature had wanted to foreclose a judicial cause of action, it would have done so expressly." *Id.* at 671, 428 A.2d at 1319. Similarly, the Oregon Court of Appeals held that remedies contained in an anti–discrimination statute did not, by design or by default, abrogate the common law remedies, since both the statute and its legislative history were devoid of any evidence of legislative intent to supersede the common law wrongful discharge remedy. *Holien v. Sears, Roebuck & Co.*, 66 Or. App. 911, 677 P.2d 704 (1984). *See also Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). California, however, has held that its Labor Code supersedes common law relief for wrongful discharge because the code established (1) a specific forum for the trial and determination of all matters under the code; and (2) a comprehensive system for relief, including reinstatement, lost wages, and work benefits. *Portillo v. G.T. Price Products, Inc.*, 131 Cal. App. 3d 285, 182 Cal. Rptr. 291 (1982). The Washington appellate court reached the same conclusion in *Jones*.

In accordance with the principles illustrated by those cases, it is our view that HRS Chapter 388 (1) establishes a clear mandate of public policy to protect an at will employee from being discharged for asserting the rights accorded him by its provisions; and (2) does not itself provide a sufficient remedy for such a discharge. Additionally, we do not detect a legislative intent in Chapter 388 to supersede an at will employee's common law remedy for wrongful discharge.

In *Arimizu*, we stated that the purpose of Part I of HRS Chapter 388 is to require that an employer pay his employees at least twice each calendar month. An obvious further purpose of Chapter 388 is to require the employer to accurately inform the employee of the compensation due and pay that amount in full.

The law ensures compliance by (1) only allowing payroll deductions authorized by federal or state statute, by court process, or by written authorization from the employee (HRS § 388-6); and (2) requiring the employer to provide the employee with a written record listing the employee's gross earnings, deductions, net compensation, and date of payment (HRS § 388-7(4)). The statute also requires the employer to retain for six years a copy of the record furnished to the employee.[7] *Id.* The clearly established policy of Chapter 388 is to ensure that the employee is fully compensated and has available to him or her all the records necessary to accurately determine that full payment was made.

In our view, discharging an at will employee for inquiring into the nature of and basis for the deductions

---

[7] In this case, Defendants failed to produce the appropriate records, apparently because they were lost.

the employer made from the employee's gross compensation would violate the clear mandate of Chapter 388's policy. Allowing the employer to discharge an employee who requests further information regarding apparently questionable deductions would effectively insulate the employer from the statute's requirements and sanctions.

Although HRS §§ 388–10 and –11 provide the employee with remedies for the employer's failure to fully compensate the employee, their terms do not provide relief for an employee discharged for attempting to assert his or her rights under the statute. Instead, the statute authorizes the Director of the Department of Labor and Industrial Relations (Director) to enforce Chapter 388 through (1) administrative investigations and hearings; or (2) specific actions for penalties or for an injunction to halt the employer's business operation until he satisfies any judgment for unpaid wages (§ 388–9). Further, the employer is civilly liable to the employee for unpaid wages (§ 388–10(a)); and may incur criminal penalties (§ 388–10(b)). An employee is authorized to sue for unpaid wages (§ 388–11(a)); and certain categories of employees may assign their claims for unpaid wages to the Director for collection (§ 388–11(b)).

Clearly, Chapter 388 provides remedies when an employer fails to pay an employee in full. Just as clearly, Chapter 388 does not, in itself, provide any remedy to an employee who has been discharged in retaliation for seeking to enforce his rights under the statute. Additionally, we find no legislative intent in Chapter 388 to supersede the common law remedy of wrongful discharge.

Accordingly, since the reason for Jerald's discharge is disputed, a genuine issue of material fact exists, and the lower court erred when it concluded that Jerald's

discharge fell outside the limitations to the discharge at will rule.

The Judgments are vacated and this matter is remanded to the lower court for further proceedings consistent with this opinion.

*Matthew N. Padgett* and *Elizabeth B. Padgett* (Padgett and Padgett, of counsel) on the brief for plaintiffs–appellants.

*Kevin S. C. Chang* and *Cora I. O'Donnell* (Watanabe, Ing & Kawashima, of counsel) on the brief for defendant–appellee Chaney Brooks & Co.

*Mark S. Kawata*, Attorney At Law (formerly of Tanaka & Kawata, on the brief), for defendant–appellee Association.