**Reza LESANE, Plaintiff,**

v.

**HAWAIIAN AIRLINES, a Hawaii corporation, Defendant.**

**No. 98–00735 DAE.**

United States District Court,
D. Hawaii.

Nov. 24, 1999.

Andre S. Wooten, Honolulu, HI, for Reza Lesane, plaintiff.

Sarah O. Wang, Marr Jones & Pepper, Stephanie L. Marn, Verner Liipfert Bernhard, McPherson and Hand, Honolulu, HI, Stephanie L. Marn, Sonnenschein Nath & Rosenthal, Washington, DC, for Hawaiian Airlines, defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, Chief Judge.

The court heard Defendant's Motion on November 19, 1999. Andre S. Wooten, Esq., appeared at the hearing on behalf of Plaintiff; Stephanie L. Marn, Esq., and Steven Nakashima, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.

### BACKGROUND

Plaintiff, an African–American, has been employed by Defendant since 1986. Plaintiff filed four charges with the Hawaii Civil Rights Commission ("HCRC") complaining of discrimination. The first charge filed September 11, 1996, alleged racial harassment, race discrimination and retaliation by Defendant based upon denial of promotion to the position of Director of Base Maintenance. The second charge filed April 28, 1997, alleged retaliation by failing to promote Plaintiff to Director of Technical Operations Administration. The third charge filed December 10, 1998, alleged discrimination based on failure to promote Plaintiff to Senior Director of Maintenance, and in the fourth charge filed June 3, 1998, Plaintiff alleged race discrimination, retaliation and harassment based upon the issuance of a week long suspension. Plaintiff received right to sue letters from HCRC for each charge dated June 1, 1998, June 8, 1998 and June 18, 1998.

The position of Director of Base Maintenance had fourteen job requirements which included a Federal Aviation Air Frame and power plant license, managerial experience, communication skills and acceptable attendance record. In reviewing Plaintiff's application for the job, Irving Fuke, a Japanese American, commented to Plaintiff that he knew Plaintiff did not write his own application because Fuke had never seen a black person that could write that way. Fuke then made the decision to promote Gary Takazono, a Japanese American, to the position of Director of Base Maintenance even though Takazono had practically no managerial experience and Plaintiff had ten years of experience. Fuke stated that he promoted Takazono because he had greater seniority at Hawaiian Airlines (as a mechanic and not as a manager) and Plaintiff had an unacceptable attendance record and poor communication skills.

Plaintiff had formerly supervised Takazono and had reported to Fuke that Takazono had directed racial slurs toward Plaintiff. Plaintiff also reported that certain employees had been harassing him with comments such as "let's go nigger rig this" and "nigger rig that" and calling him

"black ass." Plaintiff further alleges that he was harassed by a racial e-mail directed at him. There was no evidence that Fuke, or any one else, investigated these complaints or reprimanded the employees at fault.

Takazono retired from the position of Director of Base Maintenance on January 31, 1997, approximately 10 months after he was promoted to such position. Mike Kelly was then appointed to temporarily fill the vacancy even though he did not possess the required Federal Aviation Air Frame and power plant license. However, at about the same time, the position title of Director, Base Maintenance was changed to Director, Technical Operations Administration and an FAA license was no longer required. In February of 1997, Defendant posted a position available bulletin for the Director, Technical Operations Administration position and Plaintiff applied for the position. On February 13, 1997, Mike Kelly was permanently placed into the position.

On December 8, 1997, Defendant stated that the position of Director, Technical Operations Administration was reassigned and again was titled Director of Base Maintenance, Mike Kelly would no longer be working with Hawaiian Airlines and Lorrin Sardinha would assume the duties of Director of Base Maintenance. Plaintiff had formerly supervised both Takazono and Sardinah, and Plaintiff had worked at Hawaiian Airlines longer than Sardinah. Plaintiff was later suspended from work for one week for violating work rules on April 15, 1998.

Plaintiff filed a complaint on September 1, 1998 but failed to serve it. On November 13, 1998, Plaintiff filed his First Amended Complaint and served Defendant. The First Amended Complaint basically alleges the following causes of action: (1) violation of 42 U.S.C. § 1981 and § 1981(A); (2) violation of Title VII, 42 U.S.C. § 2000e; (3) racial discrimination in violation of Hawaii Revised Statutes § 378; (4) intentional inflection of emotional distress; (5) breach of contract; (6) promisso-ry estoppel; (7) breach of equal employment opportunity polices and procedures; (8) violation of whistleblower statutes; and (9) punitive damages.

On July 21, 1999, Defendant filed a Motion for Summary Judgment arguing that Plaintiff's claims are time-barred, Plaintiff failed to state a prima facie case of discrimination, Defendant had legitimate, nondiscriminatory reasons for the nonpromotion, the whistleblower claim is unsupported, and no contracts or promises were made to Plaintiff.

Plaintiff responded on September 30, 1999 and Defendant replied on October 27, 1999.

## STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

### DISCUSSION

This case involves an African–American employee who claims that his employer did not promote him because of his race.

## I. *Breach of Contract*

Defendant claims it is entitled to summary judgment on Plaintiff's breach of contract claim because there is no contract which Defendant could have breached. Defendant cites to Plaintiff's deposition in which he stated that he does not have a contract with Defendant, does not know of any facts which support a contract and does not know of any breach of a contract. Plaintiff provided no response in his opposition. Plaintiff also did not provide any facts or argument to support his breach of contract claim in his First Amended Complaint. Thus, there is no factual dispute as to whether or not an actionable contract exists. The court hereby GRANTS Defendant's motion for summary judgment on Plaintiff's claim for breach of contract.

## II. *Promissory Estoppel*

■ Defendant claims it is entitled to summary judgment on Plaintiff's promissory estoppel claim because Plaintiff testified in his deposition that management made no specific promises regarding the terms of his employment and that since no promises were made there could not have been any breach. The court agrees. Furthermore, Plaintiff did not address this claim in his opposition and he failed to allege any facts in either his complaint or concise statement of facts upon which a promissory estoppel claim could be based. Thus, the court GRANTS Defendant's summary judgment motion with respect to Plaintiff's promissory estoppel claim.

## III. *Breach of Equal Employment Opportunity Policies and Procedures*

■ Plaintiff claims that Defendant breached equal employment opportunity policies and procedures. Defendant argues that it is entitled to dismissal because there is no such legally cognizable cause of action. The court agrees and GRANTS Defendant's motion for summary judgment on Plaintiff's claim for breach of equal employment opportunity policies and procedures.

IV. *Statute of Limitations*

Defendant argues that except for the Title VII claim, Plaintiff's remaining claims are time barred because Plaintiff failed to serve Defendant with his complaint within 90 days of receipt of the right to sue letters and that Plaintiff had no intent to serve Defendant with his original complaint.

The Notice of Right to Sue provides that "within 90 days after receipt of a notice of right to sue, the complainant may bring a civil action." H.R.S. § 368–12.

Rule 3 of the Federal Rules of Civil Procedure states that "[a] civil action is commenced by filing a complaint with the court." Federal Rule of Civil Procedure 4(m) provides that the time limit for service of the summons and complaint is within 120 days after the filing of the complaint.

"[T]he statute of limitations will not be tolled merely by filing a complaint if the plaintiff has no intent to serve process." *Heiser v. Association of Apartment Owners of Polo Beach Club,* 848 F.Supp. 1482, 1484 (D.Haw.1993). "The fact that a plaintiff amends a complaint prior to serving the complaint, with the effect of preventing needless filings by parties who will be dismissed from the action, should not be regarded as evidence of a lack of intent to serve process." *Id.* at 1485 (citing *Louisville & N.R. Co. v. Little,* 264 Ky. 579, 95 S.W.2d 253 (1936) where intent not to pursue an action was evidenced by placing the complaint and summons in a drawer for two months and taking no other action.)

Here, Plaintiff filed his complaint on September 1, 1998 which was within 90 days of his receipt of the right to sue letters. Plaintiff was not also required to serve Defendant within the 90–day period, he was only required to commence the civil action by filing his complaint. Furthermore, subsequent to filing the original complaint, Plaintiff's attorney worked to amend the complaint to correct typographical mistakes and factual errors. After filing the original complaint Plaintiff had 120 days to serve Defendant. Defendant was served on November 13, 1998, well within the 120–day period. The court finds that there is no evidence that Plaintiff did not intend to serve Defendant. Therefore, Plaintiff's claims are not time barred.

Defendant also claims that with the exception of the discrimination and retaliation claims which were tolled during the administrative agency's investigation, Plaintiff's remaining causes of action are limited to claims which occurred within two years prior to filing of the action. Defendant acknowledges that the alleged discriminatory denial of promotions and suspension would be included but argues that claims of harassment before September 1, 1996 are barred. Plaintiff maintains that earlier events are not barred because they establish a prima facie case of a pattern and practice of harassment or intentional infliction of emotional distress ("IIED"). Plaintiff also argues that Hawaii's catch-all statute of six years for "personal actions of any nature whatsoever not specifically covered by the laws of the State" applies. H.R.S. § 657–1(4).

The court must look to the Hawaii statute of limitations for Plaintiff's state law claims. Personal injury claims of IIED and claims of discriminatory employment practices under Hawaii Revised Statutes sections 378–2 and 378–62 have a two-year statute of limitations. H.R.S. § 657–7; *See Linville v. State of Hawaii,* 874 F.Supp. 1095, 1103 (D.Haw.1994).

"Where federal law does not provide a statutory limitation for federal claims, the court likewise looks to state law. The applicable state statute of limitations depends on the characterization of the federal claim." *Linville,* 874 F.Supp. at 1104 (citations omitted). The two-year limitations period governing personal injury actions is the most analogous state statute of limitations to govern § 1981 suits, rather than the State's six-year catch all limitation. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 656, 107 S.Ct. 2617, 96

L.Ed.2d 572 (1987); *See also Taylor v. Regents of University of California,* 993 F.2d 710, 711 (9th Cir.1993) ("California's one-year statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985."); *Linville* 874 F.Supp. at 1104.

■ Here, Plaintiff's IIED, § 1981 and H.R.S. § 378 claims are subject to Hawaii's two-year statute of limitations for personal injury claims. However, the statute of limitations does not automatically bar Plaintiff's reliance on events which occurred more than two years prior to the filing of his complaint.

■ Section 1981 encompasses claims for failure to promote on account of race and requires proof of intent to discriminate. *Bator v. State of Hawaii,* CIV. No. 91–00264, 1992 WL 690295, at *5 (D.Haw. May 20, 1992). "Intent may be proved by circumstantial evidence, such as a pattern of conduct unexplainable on grounds other than race." *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). "[A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Angeles v. International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local No. 208,* 108 F.3d 336 (9th Cir.1997)(citing *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982)).

■ Here, Plaintiff alleges violations of section 1981 which occurred within the two-year statute of limitations period, such as failure to be promoted to the Director of Technical Operations Administration position. Therefore, Plaintiff may rely on events which occurred outside the limitations period in order to establish a pattern of conduct and/or the intent of Defendant.

■ Plaintiff may also rely on events which occurred prior to the limitations period in order to establish his IIED claim, as long as the incidents are constant and closely related to the violations which occurred within the period of limitations. *See Anderson v. State,* 88 Hawai'i 241, 965 P.2d 783, 790 (App.1998)(a claim for intentional infliction of emotional distress was a continuing tort for purposes of a statute of limitations); *See also Hays v. City and County of Honolulu,* 81 Hawai'i 391, 917 P.2d 718 (1996).

V. *Intentional Infliction of Emotional Distress*

■ Defendant argues that Plaintiff's IIED claim is barred because his exclusive remedy is under the workers' compensation scheme, Hawaii Revised Statute § 386–5. However, Defendant's argument is misplaced because "the supreme court has recognized that an employee may bring an action against his or her employer for intentional infliction of emotional distress caused by discrimination in violation of H.R.S. § 378–2, and that such an action is not barred by the exclusivity provision of H.R.S. § 386–5." *Takaki v. Allied Machinery Corp.,* 87 Hawai'i 57, 951 P.2d 507, 517 (App.1998). Here, Plaintiff has claimed IIED by discrimination in violation of H.R.S. § 378, thus, under Hawaii law, Plaintiff's claim is not barred.

Defendant also argues that Plaintiff has not established that Defendant's actions were "outrageous" as required for claims of IIED.

■ In order to recover for IIED the act complained of must be "outrageous," as defined in the Restatement (Second) of Torts § 46 (1965) which states "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tseu ex rel. Hobbs v. Jeyte,* 88 Hawai'i 85, 962 P.2d 344, 352 (1998) (quoting Restatement (Second) of Torts § 46 comment d).

■ "The question whether the actions of the alleged tortfeasor are unreasonable

or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." *Ross v. Stouffer Hotel Company (Hawaii) Ltd., Inc.,* 76 Hawai'i 454, 879 P.2d 1037, 1048 (1994).

Defendant cites *Bragalone v. Kona Coast Resort and Joint Venture,* 866 F.Supp. 1285 (D.Haw.1994), in which the plaintiff claimed she suffered emotional distress because "Mastropoalo 1) interrupted her whenever she spoke; 2) yelled at plaintiff; 3) changed his instructions to plaintiff; 4) told plaintiff she could quit if she was unhappy; 5) gave plaintiff conflicting work instructions; and 6) told plaintiff not to question his or Ako's actions." *Id.* at 1294. The court found that the plaintiff's IIED claim was insufficient as a matter of law because although the comments were distasteful, they did not rise to the level of outrageousness necessary to maintain the IIED claim under Hawaii law. *Id.* at 1295.

In *Takaki,* the plaintiff alleged that he was terminated because of his race and that his immediate supervisor had called him "lousy f——king Jap." quite often. 87 Hawai'i 57, 951 P.2d 507. The defendants claimed that he was terminated because he had not performed under the terms of an agreement. The court concluded that reasonable people could differ on whether the termination of the plaintiff in the alleged context of racial discrimination was unreasonable or outrageous. Thus, the court found that the issue was improperly decided on summary judgment. *Id.* at 518.

■ Here, Plaintiff alleges that mechanics use the term "nigger rig" at work, saying "let's go nigger rig this," people whom he supervised called him "black ass" or have used other racial epithets, he had received racial e-mail, and the person who reviewed his application for a position stated that he knew he didn't write the answers to the questions because he had never seen a black person who could write that way. These comments are clearly race related and much more egregious than the comments made to the plaintiff in

the *Bragalone* case. Plaintiff was then denied both the position for Director of Base Maintenance, and the position for Director of Technical Operations Administration allegedly based on race. Reasonable people could differ on whether Defendant's acts of failing to promote Plaintiff to several positions, suspension of Plaintiff and the alleged racial insults were outrageous. Thus, Defendant's motion for summary judgment on the IIED claim is DENIED.

## VI. *Discrimination Claims*

Plaintiff alleges race discrimination in violation of Hawaii Revised Statute § 378, Title VII and Section 1981 based upon the denials of promotion to the following positions: (1) Director of Base Maintenance; (2) Director of Technical Operations Administration; (3) Senior Director of Maintenance; and (4) Los Angeles Maintenance Manager.

Defendant argues that it is entitled to summary judgment on the discrimination claims because Plaintiff cannot show he was qualified for these positions and even if Plaintiff were qualified, Defendant had nondiscriminatory reasons for the denials of promotion.

A plaintiff must establish a prima facie case by offering evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A prima facie case may be established by showing that (1) Plaintiff belongs to a protected class; (2) Plaintiff applied for and was qualified for a job for which the employer was seeking applicants; (3) Plaintiff was rejected despite his qualifications; and (4) after being rejected, the position remained open and the employer continued to seek applications from persons with comparable qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "The requisite degree of proof necessary to establish a prima facie case for Title VII ... on summary

judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Cordova v. State Farm Ins. Companies,* 124 F.3d 1145, 1148 (9th Cir.1997); *see also Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991) ("[T]he amount [of evidence] that must be produced in order to create a prima facie case is 'very little.'").

Once the plaintiff succeeds in establishing a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If the defendant provides such a reason, then in order to prevail, the plaintiff must demonstrate that this reason is pretextual. *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

Here, Plaintiff is part of a protected class and has shown that he has applied for several positions for which Defendant was seeking applicants, he was rejected and the positions were filled by someone else. Defendant claims that Plaintiff failed to establish a prima facie case and that Defendant had a legitimate, nondiscriminatory reason because Plaintiff was not qualified for the job positions due to his unacceptable attendance record and his deficient communication skills.

▬▬▬ In the context of a prima facie case of discrimination on motion for summary judgment, Plaintiff is required only to produce evidence sufficient to indicate a genuine factual dispute about whether he possessed the minimum qualifications for the job. *See Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1460 (9th Cir.1985); *see also Patterson v. McLean Credit Union,* 491 U.S. 164, 216, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). A black plaintiff might be able to prove pretext by showing that the employer promoted white, or in this case Asian, employees who lacked some of the job qualifications upon which employer relied. *Patterson* 491 U.S. at 217, 109 S.Ct. 2363.

▬▬▬ Although "[t]here is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job [,] such skills [must be] reasonably related to job performance." *Fragante v. City and County of Honolulu,* 888 F.2d 591, 597 (9th Cir.1989) (citations omitted).[1] "Attendance may [also] be a legitimate factor in an employment decision," but the decision made to disqualify Plaintiff on this basis must be made in good faith. *Thorne v. City of El Segundo,* 726 F.2d 459, 467 (9th Cir.1983). The court must examine whether the job qualifications, communication skills or attendance record, were actually applied in a non-discriminatory manner. *Atonio v. Wards Cove Packing Co., Inc.,* 827 F.2d 439, 446 (9th Cir.1987).

Here, Defendant claimed that it did not promote Plaintiff because Plaintiff's attendance record was unacceptable, his communication skills were poor, he did not have enough knowledge of the CHAMP and SABRE systems or of the DC–9, and he had performance problems due to an incident in 1990.

However, Defendant's articulation of a legitimate, nondiscriminatory reason serves only to shift the burden back to Plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. *Burdine,* 450 U.S. at 255–256, 101 S.Ct. 1089. Plaintiff must provide specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible. Plaintiff need only produce very little evidence of discriminatory motive to raise a genuine

---

1. For example, "[a]n adverse employment decision may be predicated upon an individual's accent when—but only when—it interferes materially with job performance.... (Dominican chambermaid properly denied promotion to front desk because of her inability to articulate clearly or coherently and to make herself adequately understood in [ ] English) ... (plaintiff with a 'noticeable' Filipino accent was improperly denied a position as supervisor of a dental laboratory where his accent did not interfere with his ability to perform supervisory tasks)." *Fragante* 888 F.2d at 596–7 (citations omitted).

issue of fact. *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir.1991).

> [I]n evaluating whether the defendant's articulated reason is pretextual, the trier of fact must ... consider the same evidence that the plaintiff introduced to establish her prima facie case. When that evidence, direct or circumstantial, consists of more than the prima facie presumption, a factual question will almost always exist with respect to any claim of nondiscriminatory reason.

*Cordova* 124 F.3d at 1149–1150.

▇▇▇ In his opposition Plaintiff states that Takazono was appointed to the position even though he did not have the previous management experience required, he had excessive sick leave in 1983, and his privileges to drive Hawaiian Airlines vehicles had been suspended in 1991. Fuke stated that he promoted Takazono because he had computer skills, yet Takazono had stated in his application that his weakness was a proficiency in computer skills. Also, Takazono was previously supervised by Plaintiff and had allegedly made racial epithets to Plaintiff. Finally, Fuke himself allegedly made a racial slur to Plaintiff. The court finds that a reasonable jury could infer discriminatory intent based upon Defendant's promotion of Takazono over Plaintiff.

Defendant later appointed Kelly, who did not have the appropriate FAA license, to temporarily fill the position after Takazono resigned. However, around that time, Defendant changed the title of the position of Director of Base Maintenance to Director of Technical Operations Administration and no longer required a FAA license even though the position basically had the same duties. Finally, when Kelly left the position, Defendant changed the job title back to Director of Base Maintenance and appointed Sardinha to the position even though Plaintiff had formerly supervised Sardinha and had worked for Hawaiian Airlines longer than Sardinha. The court finds that discriminatory intent could also be inferred from this sequence of events. Thus, this evidence is sufficient to overcome Defendant's summary judgment motion and Defendant's motion for summary judgment on the discrimination claims is DENIED.

▇▇▇ The position of Senior Director of Maintenance was not posted and Defendant did not receive applications. Instead, Defendant appointed Lance Higa. Plaintiff had previously supervised Lance Higa and Higa had allegedly directed racial slurs toward Plaintiff. Plaintiff has failed to establish a prima facie case for discrimination based upon the denial of promotion to this position because he did not meet the requirement of demonstrating that Defendant was seeking applicants for the position. However, Defendant may rely on this event in order to establish Defendant's intent in failing to promote him to other positions or to show a pattern of harassment.

▇▇▇ Defendant claims that Plaintiff failed to exhaust his administrative remedies for the Los Angeles Maintenance Manager position because he did not file any charges with the HCRC or EEOC alleging discrimination based upon denial of promotion to such position. The court agrees. Thus, Plaintiff does not have a separate discrimination claim based upon the failure to promote him to this particular position.

VII. *Whistleblower Claims*

Plaintiff claims that Defendant retaliated against him by not promoting him, harassing him and suspending him because he made two reports to the FAA, one in 1990 or 1991 and the other sometime between 1992 and 1995. Defendant argues that Plaintiff's whistleblower claim is time barred because Plaintiff failed to file his whistleblower claim within ninety days of the alleged violation.

The Whistleblowers' Protection Act provides in pertinent part "[a] person who alleges a violation of this part may bring a civil action for appropriate injunctive relief, or actual damages, or both within

ninety days after the occurrence of the alleged violation of this part." H.R.S. § 378–63(a).

Here, the most recent alleged violation of the Whistleblowers' Protection Act was Defendant's suspension of Plaintiff from work on April 15, 1998. Plaintiff then had ninety days within which to file his state whistleblower claim. Plaintiff did not file his complaint until September 1, 1998, well after the ninety-day period.

■ Title VII administrative remedy does not toll the statute of limitations for other claims "even though the claims are based on the same facts and directed toward the same ends." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 467, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *See Linville*, 874 F.Supp. at 1095 (the plaintiff's § 1983, Title IX and state law claims were separate, distinct and independent from her Title VII claims and were not tolled by filing claims with the EEOC).

■ Here, Title VII administrative proceedings are not a prerequisite to the filing of a complaint based upon the Hawaii Whistleblower Statute. Furthermore, Plaintiff's only response is that he thought his state law claims would be tolled by the filing of his HCRC charges. The court finds that Plaintiff's state whistleblower claim under Hawaii Revised Statute § 378–62 is barred. Defendant's motion for summary judgment on Plaintiff's whistleblower claim is GRANTED.

### VIII. *Retaliation Claim*

Plaintiff claims that Defendant violated public policy by retaliating against him by denying certain promotions and suspending him since he reported safety violations to the FAA and filed race discrimination complaints.

■ "As a general rule, the common law remedy for wrongful discharge is precluded [ ] when the statutory provision relied upon as a bar to the action provides a sufficient remedy in itself, making the creation of an additional common law remedy unnecessary." *Smith v. Chaney Brooks*

*Realty, Inc.*, 10 Haw.App. 250, 865 P.2d 170, 174 (App.1994).

■ Here, Plaintiff is making claims of retaliation through wrongful denial of promotion based upon Hawaii Revised Statute § 378. This type of claim is analogous to a wrongful discharge claim and Hawaii Revised Statute § 378 provides a sufficient remedy for retaliation. Thus, Plaintiff's resort to a possible common law action of violation of public policy is barred. *Id.; see also Hew–Len v. F.W. Woolworth*, 737 F.Supp. 1104, 1106–1107 (D.Haw.1990) (plaintiff's claim for discharge in violation of public policy based upon Haw.Rev.Stat. §§ 378–2(1) and (5) is barred because Haw.Rev.Stat. § 378–2 provides the exclusive remedy for such claims).

### IX. *Harassment Claim*

Plaintiff claims that harassment by Defendant throughout his employment created a hostile work environment. Defendant argues that the alleged incidents are time bared because they occurred beyond the period the HCRC could investigate and beyond the two-year statute of limitations.

The scope of a complaint in a Title VII suit is generally defined not by the four corners of the prior administrative charge, but is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Moreover, the complaint in a civil action may properly encompass any discrimination similar to or reasonably related to the charges filed with the EEOC. However, the civil complaint may not include new and unrelated types of discrimination.

*Torriero v. Olin Corp.*, 684 F.Supp. 1165, 1170 (S.D.N.Y.1988).

Here, even though Plaintiff did not allege harassment in the charges filed with the HCRC on April 28, 1997, December 10, 1997, and June 3, 1998, Plaintiff did allege harassment in his charge filed on September 11, 1996. Thus, the first charge filed

gave the HCRC the opportunity to investigate his allegations of harassment.

Under the doctrine of continuing violations, an employee may establish discrimination by showing a systematic policy and practice of discrimination, which at least partially occurs within the applicable limitations period, or a series of discriminatory events of which one or more fall within the limitations period. *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989). The Plaintiff must show that allegations of conduct occurring prior to the limitations period are part of a series of related acts against him. *Id.*

Here, at least some of the acts of harassment, such as the comment made by Fuke and Fuke's denial of a position, occurred within the statute of limitations. Plaintiff reported the earlier racial slurs made by his supervisors and other mechanics to Fuke, and there is no evidence that Fuke took any actions to reprimand the employees or to remedy the situation. Fuke himself later allegedly made an offensive racial comment to Plaintiff and made the decision to deny Plaintiff the position of Director of Base Management both in 1996. Plaintiff also reported the racial e-mail in 1996. Thus, Plaintiff has demonstrated continuing violations since the events which occurred prior to the limitations period are part of a series of related acts against Plaintiff, at least through the actions of Fuke.

Defendant also argues that these acts are insufficient to create a hostile environment.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998) (citations omitted); *Snell v. Suffolk County,* 782 F.2d 1094, 1102 (2nd Cir.1986) ("It is well-established in other Circuits that a working environ-

ment overrun by racial antagonism constitutes a Title VII violation.")

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.... the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."

*Oncale,* 118 S.Ct. at 1003.

"To establish a hostile atmosphere, however, plaintiffs must prove more than a few isolated incidents of racial enmity." *Snell,* 782 F.2d at 1103 (citations omitted). Casual comments, accidental or sporadic conversation, or simple teasing, will not trigger equitable relief under the statute. *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). "Mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII." *Id.; Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir.1994) ("while a 'mere offensive utterance' might not create a hostile environment, conduct which is 'humiliating' is more likely to do so."); *Id.* at 1463 ("the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct").

Here, Plaintiff alleges that a hostile work environment was created through the denial of four positions, a suspension, workers using the terms "black ass" and "nigger rig," receiving a racial e-mail, and Fuke asking him whether he wrote his application on his own and then commenting that black people can't write that way.

Viewed in the light most favorable to Plaintiff, the court cannot conclude that there is no genuine issue of fact as to whether these incidents were sufficiently severe and pervasive to create an abusive

working environment. Thus, Defendant's motion for summary judgment on Plaintiff's harassment claim is DENIED.

## X. *Punitive Damages*

Under Title VII, a plaintiff is entitled to punitive damages if he or she

> demonstrates that the [employer] engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual ... to be entitled to an award of punitive damages, the plaintiff must demonstrate that the defendant almost certainly knew that what he was doing was wrongful and subject to punishment.

*Pavon v. Swift Transportation Co., Inc.,* 192 F.3d 902, 909 (9th Cir.1999) (citations and internal quotations omitted).

Here, since Plaintiff had reported the racial e-mail and insults to management and management took no meaningful steps to stop it, and Plaintiff alleges he was denied two promotions because of his race, a reasonable jury could find that Defendant's conduct was reprehensible. *Id.* Thus, the court DENIES Defendant's motion for summary judgment on the punitive damages claim at this time.

## *CONCLUSION*

For the reasons stated above, the court GRANTS Defendant's motion for summary judgment on Plaintiff's breach of contract claim, promissory estoppel claim, breach of equal employment opportunity policies and procedures claim, State Whistleblower claim, and violation of public policy claim (Pl['s] Memo in Opp. at 6), and DENIES Defendant's motion on Plaintiff's discrimination claims under § 1981, Title 7, or H.R.S. § 378, intentional infliction of emotional distress claim, harassment claim under Title 7, and punitive damages claim.

IT IS SO ORDERED.